UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

BARZA DEVELOPMENT CORP., ZUMON
CORPORATION and UNITED STATES
AMBASSADOR CESAR B. CABRERA
RETIRED,

Plaintiffs,

-against-

MEISTER SEELIG & FEIN LLP and
STEPHEN B. MEISTER,

Defendants.

-----------------------------------------------------X

Civil Action No.: 16-cv-07763 (PKC)

**DEFENDANTS' STATEMENT OF
UNDISPUTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1**

Defendants Meister Seelig & Fein LLP and Stephen B. Meister (collectively "MSF"),
submit the following Statement of Undisputed Material Facts, pursuant to Rule 56.1 of the Local
Rules of the United States District Court for the Southern District of New York and Fed. R. Civ.
P. 56(c), in support of MSF's motion for summary judgment pursuant to Fed. R. Civ. P. 56(a),
which is limited to the issue whether plaintiffs' amended complaint is time-barred under the
applicable statute of limitations:

    1.    This matter arises out of the effort by plaintiffs to obtain a co-developer for, or
sell outright, real property consisting of approximately 65 acres in the Barceloneta municipality
of Puerto Rico ("the property").  Am. Compl. ¶¶22-28; a copy of plaintiffs' amended complaint
is annexed to the moving Declaration of Lisa L. Shrewsberry (Shrewsberry Dec.) as Exhibit "F."

    2.    A portion of the property at one point was encumbered as security in favor of
Banco Popular, for a short term loan and line of credit having a combined face value of

approximately $1.5 million (collectively, "the loan"), which came due on October 31, 2011. Am. Compl. ¶24 (Shrewsberry Dec. Ex. "F").

3.     Plaintiffs and Caribbean Property Group ("CPG") entered a one year Confidentiality Agreement dated October 26, 2011, which was governed by New York law, in furtherance of discussions regarding a potential sale of the property or joint venture between the parties. Am. Compl. ¶28 (Shrewsberry Dec. Ex. "F"); a copy of such Confidentiality Agreement is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "A."

4.     Section 6 of the Confidentiality Agreement states that CPG "agrees that unless and until a definitive agreement between [plaintiffs] and [CPG] with respect to the Transaction has been executed and delivered, neither [plaintiffs], [CPG] or any of their affiliates will be under any legal obligation of any kind whatsoever (express or implied) with respect to such possible Transaction by virtue of this or any other written or oral expression . . . All representations and warranties concerning the Transaction shall be made solely and exclusively in such definitive agreement." (Shrewsberry Dec. Ex. "A", ¶6).

5.     Plaintiffs were able to renegotiate the due date of the loan with Banco Popular. Am. Compl. ¶¶42-45  (Shrewsberry Dec. Ex. "F").

6.     Plaintiffs also negotiated with KRB Universal Investments ("KRB") for a potential sale of the property to KRB.  Am. Compl. ¶52 (Shrewsberry Dec. Ex. "F").

7.     By document dated February 14, 2013, a copy of which is annexed to the Declaration of Lisa L. Shrewsberry as Exhibit "B," KRB offered to purchase the property pursuant to terms that included a 275-day inspection period, which allowed KRB to cancel the transaction at the total cost of $10.00, if KRB decided in its sole discretion that the property was

at all unsuitable for its needs at any time during such time period.  (Shrewsberry Dec. Ex. "B," ¶10).

8.      Plaintiffs declined KRB's offer.  Am. Compl. ¶56 (Shrewsberry Dec. Ex. "F").

9.      CPG never made an offer to purchase the property.    Am. Compl. ¶59 (Shrewsberry Dec. Ex. "F").

10.     CPG or its affiliate thereafter acquired the loan from Banco Popular, on March 25, 2013 (Am. Compl. ¶60; Shrewsberry Dec. Ex. "F"), as part of a larger acquisition of approximately 2,075 loans, with an unpaid principal balance of more than $1 billion, involving 974 properties.  A copy of the letter from CPG's counsel, Kirk Brett, to plaintiffs' then-counsel Kasowitz Benson Torres Friedman LLP ("Kasowitz"), dated September 18, 2015, explaining this information, is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "C."

11.     Plaintiffs repaid the loan at par in May 2013. Am. Compl. ¶66 (Shrewsberry Dec. Ex. "F").

12.     Plaintiffs retained MSF in the late summer of 2013, in an effort to get CPG back to the bargaining table.  Am. Compl. ¶¶72-74 (Shrewsberry Dec. Ex. "F").

13.     Stephen Meister attempted to get CPG back to the bargaining table, and communicated with Samuel Kirschner of CPG in October 2013.  However, CPG declined to negotiate with Mr. Meister, on the grounds that CPG never had a legal obligation to make an offer to purchase the property, never violated the Confidentiality Agreement, and only coincidentally acquired the Barza loan as part of a much larger, unrelated loan portfolio acquisition.  (Affidavit of Stephen B. Meister ¶¶9-10).

14.     Plaintiffs consulted a separate Puerto Rico lawyer, Rafael Sola Diaz, from October 2013 through July 2014, regarding potential bad faith tort claims against CPG under

Puerto Rico law.  Am. Compl. ¶85 (Shrewsberry Dec. Ex. "F"); Deposition Transcript of Cesar Cabrera, dated June 14, 2017, pp. 46-47 (Shrewsberry Dec. Ex. "K"); Deposition Transcript of Guillermo Morales, dated June 20, 2017, pp. 11-12 (Shrewsberry Dec. Ex. "M").

15.     By email correspondence dated October 3, 2013, Mr. Cabrera advised Mr. Meister that "I have a local lawyer getting the local legal cases of acting in bad faith." (Shrewsberry Dec. Ex. "L")

16.     Guillermo Morales, plaintiffs' principal representative, discussed the case of *Muniz v. Copan,* 113 D.P.R. 517, 13 P.R. Offic. Trans. 664 (1982) with Attorney Sola Diaz (Shrewsberry Dec. Ex. "M," pp. 11-12).

17.     Thereafter, in July 2014, plaintiffs asked MSF for their thoughts regarding a potential claim against CPG for *culpa in contrahendo*. Am. Compl. ¶85 (Shrewsberry Dec. Ex. "F").  Specifically, Mr. Morales contacted MSF on July 27, 2014 about the *Muniz v. Copan* case, after discussing it with Attorney Sola Diaz.  (Shrewsberry Dec. Ex. "M", p. 13).

18.     On July 28, 2014, MSF responded by advising plaintiffs that any such potential tort claims against CPG were time-barred.  Am. Compl. ¶88 (Shrewsberry Dec. Ex. "F").

19.     Plaintiffs picked up their legal file from MSF in September 2014. (Affid. of Stephen Meister ¶12).

20.     On behalf of plaintiffs, Guillermo Morales discussed with Kasowitz a potential claim against MSF by plaintiffs at least as early as August 2015. (Shrewsberry Dec. Ex. "M", pp. 17-18)

21.     All plaintiffs are citizens of Puerto Rico (Am. Compl. ¶¶14-16); Shrewsberry Dec. Ex. "F"), and all defendants are citizens of New York. (Affid. of Stephen Meister ¶2)

22.     A one year statute of limitations under the law of Puerto Rico, as imported by CPLR 202, governs the claims herein against MSF.  Am. Compl. ¶105 (Shrewsberry Dec. Ex. "F").

23.     Plaintiffs commenced this action by filing a complaint [Doc. No. 1] in the United States District Court for the Southern District of New York on October 4, 2016.  (Shrewsberry Dec. Ex. "D.")

24.     MSF responded to the original complaint by letter, dated October 31, 2016 [Doc. No. 13], seeking permission from this Court to move, before answering or conducting discovery, to dismiss the original complaint on statute of limitations grounds.  (Shrewsberry Dec. Ex. "E".)

25.     Plaintiffs addressed MSF's position by filing an amended complaint [Doc. No. 18] on November 18, 2016, asserting new allegations that plaintiffs did not "discover" their claim against MSF until November 2015, because their then counsel Kasowitz, was unable to analyze whether any causes of action by plaintiffs against MSF lied without first reviewing MSF's billing records, and that MSF had never sent any bills to them, and actually refused to do so, until Kasowitz was able to obtain MSF's bills from MSF in November 2015.  Am. Compl. ¶¶9, 98-99 (Shrewsberry Dec. Ex. "F").

26.     Two months after the amended complaint was filed, Kasowitz advised the Court by Declaration [Doc. No. 32] and letter [Doc. No. 33], both dated January 30, 2017 (Shrewsberry Dec. Exs. "H" and "I"), that they were withdrawing paragraphs 9, 98 and 99 from the amended complaint because they contained false statements of fact.

27.     The false statements of fact sought to be withdrawn and corrected by plaintiffs via their then-counsel Kasowitz were that MSF had only sent its bills for the first time to plaintiffs in

November 2015, and that a review of the MSF bills was necessary to analyze whether plaintiffs had a claim against MSF.  Am. Compl. ¶¶9, 98, 99 (Shrewsberry Dec. Ex. "F").

28.     Transmission emails produced in discovery by the parties show that MSF's bills had been sent monthly to plaintiffs, such that they had the bills before November 2015.  The six MSF billing statements were sent by MSF to Cesar Cabrera at his email address – cabreracb@hotmail.com on or about October 15, 2013, November 12, 2013, December 5, 2013, June 10, 2014, July 11, 2014 and August 19, 2014, and are attached to the moving affidavit of Stephen B. Meister, with transmission emails, as Exhibits "B" through "G", respectively.

Dated: Hawthorne, New York
      August 4, 2017

                TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
                *Attorneys for Defendants*

                By:_____
                    Lisa L. Shrewsberry  (LS 1597)
                    Mid-Westchester Executive Park
                    Seven Skyline Drive
                    Hawthorne, New York 10532
                    (T) (914) 347-2600
                    (F) (914) 347-8898