UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

BARZA DEVELOPMENT CORP., ZUMON
CORPORATION and UNITED STATES
AMBASSADOR CESAR B. CABRERA
RETIRED,

        Plaintiffs,

    -against-

MEISTER SEELIG & FEIN LLP and
STEPHEN B. MEISTER,

        Defendants.

----------------------------------------------------------X

Civil Action No.: 16-cv-07763 (PKC)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT BY DEFENDANTS
MEISTER SEELIG & FEIN LLP and
STEPHEN B. MEISTER**

Of Counsel:
   Lisa L. Shrewsberry, Esq.

TRAUB LIEBERMAN STRAUS &
SHREWSBERRY LLP
*Attorneys for Defendants*
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................1

    Background Facts .........................................................................................1

    Retention of MSF .........................................................................................3

    The Original Complaint ................................................................................4

    The Amended Complaint ..............................................................................5

ARGUMENT.......................................................................................................12

    POINT I --     STANDARD OF REVIEW....................................................12

    POINT II --    PLAINTIFFS' CLAIMS ARE TIME-BARRED ...................14

    Any Claims By Plaintiffs Against MSF Accrued in July 2014 .........................16

    At Latest, Plaintiffs' Claims Against MSF Accrued in August 2015...............18

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505 (1986)...............................................................12

*Arturet-Velez v. R.J. Reynolds Tobacco Co.,*
    429 F.3d 10 (1st Cir. 2005)...........................................................................15

*Benn v. Kissane,*
    510 F. App'x 34 (2d Cir. 2013) ..................................................................12

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.,*
    448 F.3d 573 (2d Cir. 2006) ........................................................................14

*Bickerstaff v. Vassar Coll.,*
    196 F.3d 435 (2d Cir. 1999) ........................................................................13

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548 (1986)...............................................................12

*Fincher v. Depository Trust & Clearing Corp.,*
    604 F.3d 712 (2d Cir. 2010) ........................................................................12

*Garcia-Colon v. Garcia-Rinaldi,*
    340 F.Supp.2d 113 (D.P.R. 2004) ................................................................15

*Global Fin. Corp. v. Triarc Corp.,*
    93 N.Y.2d 525, 693 N.Y.S.2d 479 (1999).....................................................14

*Heck-Dance v. Cardona-Jiminez,*
    102 Fed.Appx. 171 (1st Cir. 2004)................................................................15

*KB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.,*
    634 Fed.Appx. 19 (2d Cir. 2015)..................................................................14

*Kat House Prods., LLC v. Paul, Hastings, Janofsky Walker, LLP,*
    71 A.D.3d 580, 897 N.Y.S.2d 90 (1st Dep't 2010) .......................................15

*Lazaro v. Abbott Med. Optics, Inc.,*
    2017 U.S. Dist. LEXIS 58350 (D.P.R. 2017)................................................17

*Lopez-Flores v. Cruz-Santiago,*
    526 F.Supp.2d 199 (D.P.R. 2007) ...........................................................15, 18

*Norex Petroleum Ltd., v. Blavatnik,*
   23 N.Y.3d 665, 992 N.Y.S.2d 503 (2014) ..............................................................14

*Rodriguez-Suris v. Montesinos,*
   123 F.3d 10 (D.P.R. 1997) ...................................................................................16, 19

*Thea v. Kleinhandler,*
   807 F.3d 492 (2d Cir. 2015) ......................................................................................14

*Villarini-Garcia v. Hospital del Maestro, Inc.,*
   8 F.3d 81 (1ˢᵗ Cir. 1993).............................................................................................15

**STATUTES**

31 P.R. Laws Ann. ¶5141 ...............................................................................................15

31 P.R. Laws Ann. ¶5298(2) ..........................................................................................15

CPLR §202 ..................................................................................................................14-16

Fed. R. Civ. P. 56...........................................................................................................20

Fed. R. Civ. P. 56(a) ....................................................................................................1, 12

Fed. R. Civ. P. 56(c)(1)...................................................................................................12

## PRELIMINARY STATEMENT

This memorandum of law is submitted by Meister Seelig & Fein LLP and Stephen B. Meister (collectively "MSF"), in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). Plaintiffs' claims against MSF are time-barred. They fail for additional reasons, but, pursuant to Court directive, the parties have conducted limited discovery to bring this motion, on an expedited basis, based on the statute of limitations.

## STATEMENT OF FACTS

### Background Facts

Plaintiffs allege that between 2003 and 2011, they acquired contiguous parcels of land totaling approximately 65 acres in the Barceloneta municipality of Puerto Rico ("the property"). Am. Compl. ¶22. Plaintiffs sought to rezone the property and obtain the necessary permits for development. Am. Compl. ¶23. Plaintiffs restructured a prior debt to Banco Popular, secured by a portion of the property, into a short term loan and line of credit worth approximately $1.5 million ("the loan"), which came due on October 31, 2011. Am. Compl. ¶24. Plaintiffs' goal was to find a potential business partner to co-develop the property. Am. Compl. ¶25.

Plaintiffs allege that they met with Caribbean Property Group ("CPG") in October 2011, as a potential business partner, and that discussions took place through 2012. Am. Compl. ¶¶26-41. CPG expressed an interest in entering a joint venture with plaintiffs, or purchasing the property outright, if certain regulatory hurdles were cleared. Am. Compl. ¶28. In furtherance of such discussions, plaintiffs and CPG entered a one year Confidentiality Agreement dated October 26, 2011, a copy of which is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "A." Meanwhile, plaintiffs were able to renegotiate the due date of the loan with Banco Popular. Am. Compl. ¶¶42-45.

Plaintiffs allege that in August 2012, the property was granted commercial zoning, and in the next few months received additional development permits. Am. Compl. ¶¶49-50. Accordingly, plaintiffs were allegedly approached by other potential co-developers, including KRB Universal Investments ("KRB"). Am. Compl. ¶¶51-52. Plaintiffs allege they negotiated with KRB from October 2012 to February 2013 for a potential sale of the property to KRB. Am. Compl. ¶52. Plaintiffs allege, however, that on February 5, 2013, CPG advised plaintiffs that if they waited one month, CPG would make a binding offer to purchase the property. Am. Compl. ¶53. CPG allegedly asked plaintiffs to decline any intervening offers prior to CPG's intended offer, and plaintiffs allegedly agreed to do so, despite the lack of a concrete offer from CPG at the time (Am. Compl. ¶54) and the express provision in the Confidentiality Agreement, which was governed by New York law and contained a no oral modification clause, stating that neither Barza nor CPG was under any obligation to enter a contract to transact or joint venture the property. (Shrewsberry Dec. Ex. "A," p. 2-3).

Plaintiffs allege that, on February 14, 2013, KRB made a "formal offer" of $33.2 million to purchase the property. Am. Compl. ¶55. A copy of the offer referred to by plaintiffs is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "B." A review of such purported formal offer, however, reveals that it was in reality nothing more than a 275-day inspection period, which allowed KRB to cancel the transaction at the total cost of $10.00, if KRB decided, in its sole discretion, that the property was at all unsuitable for its needs at any time during such time period. (Shrewsberry Dec. Ex. "B," ¶10). Plaintiffs allege they rejected KRB's offer, in anticipation of a future offer from CPG, which they expected by March 5, 2013. Am. Compl. ¶56. CPG, however, never made an offer to purchase the property. Am. Compl. ¶59.

Plaintiffs allege that CPG thereafter acquired the loan from Banco Popular, on March 25, 2013. Am. Compl. ¶60. It is alleged, upon information and belief, that CPG did so in the hopes that it could manipulate plaintiffs into a position where they would be forced to sell the property at a "fire sale" price, less than its value of $33 million. Am. Compl. ¶62. However, it was determined during discovery that the Barza loan of $1.5 million was in actuality acquired as part of a larger acquisition of approximately 2,075 loans, with an unpaid principal balance of more than $1 billion, involving 974 properties. A copy of the letter from CPG's counsel, Kirk Brett, to plaintiff's then-counsel Kasowitz Benson Torres Friedman LLP ("Kasowitz"), dated September 18, 2015, explaining this information, is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "C." Plaintiffs allege that CPG demanded payment of the loan in April 2013, at par, and that plaintiffs repaid same, at par, in May 2013. Am. Compl. ¶¶65-66. Thereafter, plaintiffs inquired whether CPG was interested in purchasing the property, as had been discussed in February 2013, but CPG did not respond. Am. Compl. ¶69-70. It was unclear to plaintiffs if CPG ever had any real interest in purchasing the property. Am. Compl. ¶71.

**Retention of MSF**

Plaintiffs allege that they retained MSF in the summer of 2013, in an effort to get CPG back to the bargaining table, and to press any viable claims against CPG. Am. Compl. ¶¶72-74. It is alleged that in October 2013, CPG advised MSF that they had no interest in purchasing the property. Am. Compl. ¶¶75-76. Indeed, Stephen Meister did attempt to get CPG back to the bargaining table, and communicated with Samuel Kirschner of CPG in October 2013. However, given that CPG had no legal obligation to make an offer to purchase the property, that CPG never violated the Confidentiality Agreement, which expressly confirmed that CPG had no obligation to make any offer with respect to the property, and that CPG only coincidentally

acquired the Barza loan as part of a much larger portfolio acquisition, CPG declined to negotiate with MSF. (Affidavit of Stephen Meister ¶¶9-10). Plaintiffs allege that MSF agreed to follow up with a demand letter to CPG, outlining the legal claims possessed by plaintiffs against CPG. Am. Compl. ¶78. Plaintiffs alleged that no such demand letter was sent by MSF to CPG, on behalf of plaintiffs, and that no further action was taken by MSF on behalf of plaintiffs after October 2013. Am. Compl. ¶79.

Plaintiffs allege that at the time they retained MSF, they possessed claims against CPG for fraud, fraudulent inducement and *culpa in contrahendo*, all of which were subject to a one year statute of limitations under the law of Puerto Rico. Am. Compl. ¶80. It is alleged that MSF failed to pursue such claims on behalf of plaintiffs, and that MSF failed to send a demand letter to CPG, which would have tolled the statute of limitations on plaintiff's claims against CPG. Am. Compl. ¶87. Plaintiffs allege that they consulted a separate Puerto Rico lawyer in the summer of 2014, who advised them of the claims that they could have brought against CPG. Am. Compl. ¶85. Plaintiffs allege that thereafter, in July 2014, they asked MSF for their thoughts regarding a potential claim against CPG for *culpa in contrahendo*. based on an English translation[1] of a case decided by Puerto Rico court, cited by their Puerto Rico lawyer. Am. Compl. ¶85. Plaintiffs allege that in July 2014, MSF responded by advising plaintiffs that any such potential claims were time-barred. Am. Compl. ¶88. It is undisputed that plaintiffs picked up their legal file from MSF in September 2014, and that MSF's representation of plaintiffs had ended by such time, at latest. (Affid. of Stephen Meister ¶12)

## The Original Complaint

Plaintiffs commenced this action by filing a complaint [Doc. No. 1] in the United States District Court for the Southern District of New York on October 4, 2016. (Shrewsberry Dec. Ex.

---

[1]     Mr. Meister does not speak Spanish. (Affid. of Stephen Meister ¶5)

"D.") MSF responded to the original complaint by letter, dated October 31, 2016 [Doc. No. 13], seeking permission from this Court to move, before answering or conducting discovery, to dismiss the original complaint on statute of limitations grounds. (Shrewsberry Dec. Ex. "E".) MSF advised the Court that any claim was time-barred in July 2015, which was one year after MSF advised plaintiffs that their purported tort claims against CPG were time-barred. Plaintiffs addressed MSF's position by filing an amended complaint [Doc. No. 18] on November 18, 2016. (Shrewsberry Dec. Ex. "F"). MSF denied all allegations of wrongdoing, and preserved its affirmative defenses, by answer [Doc. No. 23] filed on December 9, 2016. (Shrewsberry Dec. Ex. "G").

**The Amended Complaint**

The amended complaint asserted revised allegations, in an effort to resist the time bar. Under the amended complaint, plaintiffs allege that their claim against MSF was not time-barred by July 2015, because plaintiffs did not "discover" their claim against MSF until November 2015. Plaintiffs added allegations that in April 2015, plaintiffs retained Kasowitz to get CPG back to the negotiating table, but that CPG remained uninterested. Am. Compl. ¶¶95-97. Plaintiffs alleged that Kasowitz was unable to analyze whether any causes of action by plaintiffs against MSF lied, without first reviewing MSF's billing records. Am. Compl. ¶98. Plaintiffs alleged that MSF had never sent any bills to them, and actually refused to do so, until Kasowitz was able to obtain MSF's bills from MSF in November 2015. Kasowitz alleged that only once they had received MSF's billing records, could they have discovered that MSF was responsible for the failure to pursue the purportedly viable tort claims against CPG. Am. Compl. ¶99. Solely based upon this argument, plaintiffs asserted that this lawsuit is timely under the one year statute of limitations imposed by the law of Puerto Rico, applicable here under New York's

"borrowing" statute (CPLR 202), because it was commenced within one year of November 2015. Am. Compl. ¶105.

However, as detailed below, transmission emails produced in discovery by the parties showed that MSF's bills in fact had been sent monthly to plaintiffs, such that they had the bills before November 2015. (Affid. of Stephen Meister ¶13, and Exs. "B" through "G" thereto)

Two months after the amended complaint was filed, in response to a motion to disqualify Kasowitz [Doc. No. 26], it withdrew from the representation of plaintiffs herein. In doing so, Kasowitz advised the Court by Declaration [Doc. No. 32] and letter [Doc. No. 33], both dated January 30, 2017 (Shrewsberry Dec. Exs. "H" and "I"), that plaintiffs were withdrawing paragraphs 9, 98 and 99 from the amended complaint. In their January 30 letter, Kasowitz advised that they were withdrawing such paragraphs from the amended complaint pursuant to New York Rule of Professional Conduct 3.3, which requires a lawyer to disclose to the Court the falsity of evidence offered by his client, and requires a lawyer to correct any false statement of fact made to the Court by the lawyer. The false statements of fact sought to be withdrawn and corrected by Kasowitz were that MSF only sent its bills for the first time to plaintiffs in November 2015, and that a review of the MSF bills was necessary to analyze whether plaintiffs had a claim against MSF. Am. Compl. ¶¶9, 98, 99. In fact, as stated above and detailed below, transmission emails produced in discovery by the parties had showed that MSF's bills had been sent monthly to plaintiffs, such that they had the bills before November 2015.

Indeed, as set forth in the email correspondence sent from Kasowitz to plaintiff Cesar Cabrera and plaintiff's main representative Guillermo Morales, dated January 20, 2017 (Shrewsberry Dec. Ex. "J") – produced only after MSF moved for the production of previously withheld attorney-client communications on the ground that the privilege had been waived [Doc.

No. 50] -- Kasowitz's review of plaintiffs' documentation demonstrated that plaintiffs' "receipt of timely billing records [from MSF] appears to undermine any reasonable theory under which the statute of limitations to sue Meister didn't expire before [Kasowitz] was retained." The contemporaneous transmission of bills by MSF and receipt of same by plaintiffs, to which the January 20 email by Kasowitz refers, is demonstrated by the copies of the six MSF billing statements sent by MSF to Cesar Cabrera at his email address – cabreracb@hotmail.com[2] on or about October 15, 2013, November 12, 2013, December 5, 2013, June 10, 2014, July 11, 2014 and August 19, 2014, copies of which are attached to the moving affidavit of Stephen B. Meister, with transmission emails, as Exhibits "B" through "G", respectively. While it is categorically denied that any review of such billing statements, in whole or in part, was necessary to determine whether plaintiffs had any claim against MSF, it is undeniable that they had access to all of MSF's billing statements contemporaneously, as the bills were prepared by MSF and sent to Mr. Cabrera, pursuant to MSF's monthly billing system.

In any event, discovery also made clear that as early as October 2013, plaintiff was consulting with a Puerto Rico lawyer, Rafael Sola Diaz, about potential claims for bad faith against CPG. By email correspondence dated October 3, 2013 (Shrewsberry Dec. Ex. "L"), Mr. Cabrera advised Mr. Meister that "I have a local lawyer getting the local legal cases of acting in bad faith." When asked about this communication during his deposition, Mr. Cabrera testified as follows:

> Q.    Right before you say "saludos," could you read that line
>        into the record please?

---

[2] See copy of the transcript of the deposition of Cesar Cabrera, dated June 14, 2017, annexed to the Declaration of Lisa L. Shrewsberry as Ex. "K," pp. 55-56.

A.      "I have a local lawyer getting the local legal cases of acting

        in bad faith."

Q.      The lawyer that you are referring to in the email is whom?

A.      What?

Q.      Who is the lawyer that you are referring to in this email?

A.      Sola

Q.      Is that Rafael Sola Diaz?

A.      Yes.

                        *       *       *

Q.      Did he get those cases for you?

A.      He got one case.

Q.      When was that?

A.      After he did research.  I don't remember.

                        *       *       *

Q.      Do you remember the name of the case?

A.      I think it's Copan Muniz case.

Q.      Do you remember when you received it from him?

A.      I don't remember.

Q.      Was it near in time to the October 3rd email in which you

        reference it?

A.      I don't remember.

(Shrewsberry Dec. Ex. "K," pp. 46-47).

Plaintiffs, therefore, had retained a Puerto Rico lawyer for the purpose of investigating potential bad faith tort claims against CPG, as they advised MSF in October 2013. This fact was supported by the testimony of Guillermo Morales[3], plaintiffs' principal representative, who also testified that he had discussed the *Muniz v. Copan*[4] case with Attorney Sola Diaz, but not until "maybe July 2014." (Shrewsberry Dec. Ex. "M," pp. 11-12). It was, in fact, Mr. Morales who contacted MSF on July 27, 2014 about the *Muniz v. Copan* case, after discussing it with Attorney Sola Diaz. (Shrewsberry Dec. Ex. "M", p. 13); Am. Compl. ¶85. Plaintiffs' amended complaint makes clear that on July 28, 2014, in response, MSF advised plaintiffs that any tort claims against CPG were time-barred. Am. Compl. ¶88. Indeed, plaintiffs' consultation with Attorney Sola Diaz in Puerto Rico from October 2013 to July 2014 regarding potential bad faith tort claims against CPG was an additional ground cited by Kasowitz in its January 20, 2017 correspondence to plaintiffs for its need to resign, as Kasowitz believed such facts to be fatal to plaintiffs' ability to resist dismissal on statute of limitations grounds. (Shrewsberry Dec. Ex. "J").

Finally, during his deposition, Mr. Morales testified that he discussed with Kasowitz a potential claim against MSF by plaintiffs at least as early as August 2015.

Q. Did you ever talk to them after April 2015?

A. To Kasowitz?

Q. Yes.

A. Yes.

Q. When was that?

---

[3] A copy of the transcript of the deposition of Guillermo Morales, dated June 20, 2017, is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "M."

[4] A copy of *Muniz v. Copan*, 113 D.P.R. 517, 13 P.R. Offic. Trans. 664 (1982) is annexed to the Shrewsberry Declaration as Ex. "N."

A.    At different time periods.

Q.    Was the subject matter of those conversations always the demand letter?

A.    I believe not always.

Q.    What were the other subjects you discussed?

A.    I think in August of 2015, there was a discussion about what Meister and --

                    *        *        *

A.    In August of 2015 we discussed what Meister had told Jennifer Recine [Kasowitz] . . . Jennifer had reservations of what they were saying, and thought that then the case should turn to other, another focus.  I relied on her legal expertise.

Q.    What was the other focus?  Did you have a conversation with Jennifer Recine [Kasowitz] in August of 2015 about a potential lawsuit against Meister?

A.    Yes.

(Shrewsberry Dec. Ex. "M", pp. 17-18)

The facts, therefore, irrefutably demonstrate that plaintiffs: (1) had agreed in a writing, governed by New York law, that CPG had no obligation to make any offer with respect to the property, (2) were nevertheless consulting Attorney Sola Diaz, a Puerto Rico lawyer, as early as October 2013, about potential tort claims against CPG for having allegedly breached an oral promise to make an offer with respect to the property, (3) were advised in July 2014 by MSF –

after plaintiffs supplied MSF with a case cited by their Puerto Rico lawyer – that any tort claims against CPG were time-barred, (4) were no longer represented by MSF as of September 2014, at latest, (5) were discussing with Kasowitz a potential legal malpractice claim against MSF at least as early as August 2015, but (6) did not file suit against MSF until October 4, 2016.

# ARGUMENT

## POINT I

## STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *Id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

A genuine dispute of material fact only exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *Benn v. Kissane,* 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir. 2010). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."

*Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir. 1999). As discussed herein, MSF is entitled to summary judgment dismissing the amended complaint as time-barred, because plaintiffs are unable to demonstrate that any genuine issue of material fact exists in opposition to this motion.

**POINT II**

**PLAINTIFFS' CLAIMS ARE TIME-BARRED**

The jurisdiction of this Court is based entirely upon the diversity of citizenship of the parties. Am. Compl. ¶11. All plaintiffs allege citizenship of Puerto Rico (Am. Compl. ¶¶14-16), and it is properly alleged that the defendants are citizens of New York. (Am. Compl. ¶¶17-18). A federal court sitting in diversity, applies the choice of law rules of the forum state to determine which statute of limitations applies. *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573 (2d Cir. 2006). New York choice of law rules, therefore, apply here.

Under New York's "borrowing statute," when a non-resident sues in New York on a cause of action accruing outside New York, the applicable statute of limitations is the shorter of (1) New York's limitations period, or (2) the limitations period of the state where the claim accrued. CPLR §202; *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 Fed.Appx. 19 (2d Cir. 2015). Moreover, if a court determines the cause of action accrued in another state and borrows a shorter limitations period from that state, it should also borrow that state's rules for accrual and tolling. *Norex Petroleum Ltd., v. Blavatnik*, 23 N.Y.3d 665, 992 N.Y.S.2d 503 (2014). This rule prevents non-residents from forum shopping in New York for a favorable statute of limitations. *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 693 N.Y.S.2d 479 (1999).

Plaintiffs are undisputedly residents of Puerto Rico, and their purported causes of action against MSF accrued in Puerto Rico. A cause of action accrues at the time and place where plaintiff first had the right to bring the cause of action. *Id.*; *Thea v. Kleinhandler*, 807 F.3d 492 (2d Cir. 2015). Where an alleged "injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.* at 498. Plaintiffs' claims

14

herein are those of pure economic injury, and therefore accrued in Puerto Rico, where the plaintiffs reside and allegedly sustained economic injury by reason of a loss related to real property located in Puerto Rico. *Kat House Prods., LLC v. Paul, Hastings, Janofsky Walker, LLP*, 71 A.D.3d 580, 897 N.Y.S.2d 90 (1st Dep't 2010). As plaintiffs are residents of Puerto Rico, and their alleged claims are for loss related to real property located in Puerto Rico, their claims against MSF therefore accrued in Puerto Rico, and timeliness must be considered under the law of Puerto Rico. Plaintiffs do not dispute that the law of Puerto Rico, as imported by CPLR 202, governs. Am. Compl. ¶105.

Plaintiffs' claims against MSF are time-barred under the law of Puerto Rico. Plaintiffs' amended complaint asserts two causes of action against MSF, for legal malpractice and breach of fiduciary duty, both based on identical allegations and seeking the same damages. Under the law of Puerto Rico, such tort actions are subject to a one year statute of limitations. 31 P.R. Laws Ann. ¶¶5141, 5298(2); *Heck-Dance v. Cardona-Jiminez*, 102 Fed.Appx. 171 (1st Cir. 2004); *Lopez-Flores v. Cruz-Santiago*, 526 F.Supp.2d 199 (D.P.R. 2007) (one year statute of limitations applies to tort claims against former attorneys).

Unlike New York, Puerto Rico tolls such statute of limitations until the plaintiff is on notice of his claim. *Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10 (1st Cir. 2005). This does not require actual knowledge, but only notice that would lead a reasonable person to investigate and uncover any needed information. *Arturet-Velez*, 429 F.3d at 14; *Villarini-Garcia v. Hospital del Maestro, Inc.*, 8 F.3d 81 (1st Cir. 1993). Therefore, under such discovery rule, a claim accrues when a plaintiff has enough facts to give rise to a duty to inquire into the existence of a potential cause of action. *Garcia-Colon v. Garcia-Rinaldi*, 340 F.Supp.2d 113 (D.P.R. 2004). Once a plaintiff is made aware of facts sufficient to put him on notice of a potential

wrong, he must pursue the facts with respect to the cause of such wrong with due diligence, or risk being held to have relinquished his right to pursue it later, after the limitations period has run. *Rodriguez-Suris v. Montesinos*, 123 F.3d 10 (D.P.R. 1997).

### Any Claims By Plaintiffs Against MSF Accrued in July 2014

Plaintiffs clearly allege they sustained damage as a result of MSF's alleged failure to preserve their purported tort claims against CPG. It cannot be disputed that plaintiffs became aware of the purported tort claims they contend should have been asserted against CPG, at some point between October 2013 and July 2014 (at latest), upon consultation with a separate Puerto Rico lawyer, Rafael Sola Diaz. It is also irrefutable (because plaintiffs themselves allege it in their amended complaint), that, when plaintiffs asked MSF for their thoughts about such purported tort claims against CPG in July 2014 (based on the case provided by Attorney Sola Diaz), MSF advised them that any such claim was by then time-barred. [5] Am. Compl. ¶88. Plaintiffs, therefore, had until July 2015, at the latest, to timely assert their claims against MSF under the law of Puerto Rico, imported here under CPLR 202.

When this argument was immediately raised in response to plaintiffs' original complaint, plaintiffs shifted their allegations in their amended complaint to argue that it was not possible for plaintiffs to be aware of enough facts to start the clock on the one year statute of limitations, and trigger plaintiffs' duty to investigate, until November 2015. Plaintiffs' revised allegations asserted that MSF never sent any bills to plaintiffs and later refused to send copies of bills, until Kasowitz was able to obtain same from MSF in November 2015. Moreover, plaintiffs alleged

---

[5] Although irrelevant to this motion, which is limited to the issue whether this matter is time-barred, MSF contends that it was retained to assert claims against CPG for breach of the Confidentiality Agreement, which is governed by New York law (MSF employs no lawyers admitted in Puerto Rico), and that it was never retained to assert or preserve any tort claims against CPG under Puerto Rico law.

that, only upon receipt of MSF's billing statements in November 2015, could plaintiffs and Kasowitz piece together that plaintiffs had a claim against MSF.

This argument, however, fails on two fronts. First, plaintiffs – via their then counsel of record Kasowitz – have retracted as false the assertions that (1) plaintiffs did not receive timely billing statements from MSF during its representation of plaintiffs, and (2) that a review of such billing statements was required in order to determine whether plaintiffs had a claim against MSF. Am. Compl. ¶¶98-99; Shrewsberry Dec. Exs. "H" and "I". Secondly, even if Kasowitz had not retracted such allegations, plaintiffs would be unable to demonstrate that the MSF billing statements were necessary to determine whether plaintiffs had a claim against MSF. Plaintiffs had possession of MSF's file since they picked it up in September 2014, and it is undisputed that MSF's representation of plaintiffs ended at such time, at latest. Plaintiffs and their counsel knew that MSF did not commence any legal action against CPG, and that any of the purported tort claims against CPG became time-barred on February 14, 2014 (indeed they allege that MSF so advised them in July 2014), during the time that MSF was providing other legal services to plaintiffs.

Plaintiffs have argued that they were unsure if they had a claim against MSF, because it was unclear whether MSF had sent a demand letter to CPG on their behalf, which could have tolled the statute of limitations applicable to their purported tort claims against CPG. However, this argument ignores the facts that (1) MSF unequivocally advised plaintiffs in July 2014 that their purported tort claims against CPG were already time-barred, and (2) that any such demand letter would only have served to reset the start of the one year statute of limitations under Puerto Rico law. *Lazaro v. Abbott Med. Optics, Inc.*, 2017 U.S. Dist. LEXIS 58350 (D.P.R. 2017) (Puerto Rico one year tort statute of limitations may be reset and begin to run again from the date

of a sufficient demand letter served within the original one year statute of limitations). Therefore, plaintiffs cannot possibly take the position that they were unable to ascertain whether MSF may have tolled their purported claims against CPG until they reviewed the MSF billing statements. To have tolled the CPG statute, MSF would have had to have sent a tolling demand letter before February 14, 2014, which it clearly had not. (As evidenced by plaintiffs' allegation that MSF had informed plaintiffs in July 2014 that any purported tort claim against CPG was then time barred; had MSF sent a tolling letter by February 2014 it would not have so informed plaintiffs.) In any event, any toll would have only extended the plaintiff's ability to bring their tort claims for another year thereafter, which clearly expired before July 2015.

## At Latest, Plaintiffs' Claims Against MSF Accrued in August 2015

Finally, even if plaintiffs' claims were not time-barred by July 2015, as discussed above, they most certainly were time-barred by August 2016, at latest. Plaintiff's key representative, Mr. Morales, testified that he was discussing with Kasowitz a potential lawsuit against MSF in August 2015. Under the law of Puerto Rico, the one year statute of limitations clock begins ticking when the plaintiffs become aware of facts that would lead a person to investigate whether they might have a claim, so as to uncover necessary information. In *Lopez-Florez v. Cruz-Santiago,* 526 F. Supp.2d 199 (D.P.R. 2007) which is analogous to this matter, as it discusses the accrual of the one-year statute of limitations in a legal malpractice case, the Court dismissed the plaintiffs' claims against their former attorneys as time-barred, because the former attorneys had withdrawn prematurely from representing them before a civil action was concluded, and the date of such withdrawal was the date of accrual of any potential legal malpractice claim. The Court determined that the clock started ticking on the first date that plaintiffs felt aggrieved, and that plaintiffs then were on duty to investigate any potential claim starting on such date, in order to

determine if the attorneys had committed legal malpractice. It bears repeating that once a plaintiff is made aware of facts sufficient to put him on notice of a potential wrong, he must pursue the facts with respect to the cause of such wrong with due diligence, or risk being held to have relinquished his right to pursue it later, after the limitations period has run. *Rodriguez-Suris v. Montesinos*, 123 F.3d 10 (D.P.R. 1997). Certainly, a discussion with counsel about a potential lawsuit against MSF started the one year clock ticking (if the matter was not already time-barred), and the complaint would have been due, at latest, one year later in August 2016. The complaint, however, was not filed until October 4, 2016.

## CONCLUSION

Accordingly, plaintiffs' claims herein were long time-barred under the law of Puerto Rico at the time they commenced this action in October 2016. It is respectfully requested, therefore, that the amended complaint be dismissed as time-barred, pursuant to Fed. R. Civ. P. 56.

Dated: Hawthorne, New York
      August 4, 2017

                          TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
                          *Attorneys for Defendants*

                          By:_____
                                Lisa L. Shrewsberry (LS 1597)
                                Mid-Westchester Executive Park
                                Seven Skyline Drive
                                Hawthorne, New York 10532
                                (T) (914) 347-2600
                                (F) (914) 347-8898