UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
BARZA DEVELOPMENT CORP., ZUMON
CORPORATION and UNITED STATES
AMBASSADOR CESAR B. CABRERA          Civil Action No.: 16-cv-07763 (PKC)
RETIRED,

                                    **DEFENDANTS' REPLY TO NEWLY**
                  Plaintiffs,        **ASSERTED ADDITIONAL FACTS**
                                    **WITHIN PLAINTIFFS'**
                                    **COUNTERSTATEMENT OF**
          -against-                 **UNDISPUTED MATERIAL FACTS**
                                    **PURSUANT TO LOCAL RULE 56.1**


MEISTER SEELIG & FEIN LLP and
STEPHEN B. MEISTER,

                  Defendants.
-----------------------------------------------------X


        Plaintiffs Barza Development Corp., Zumon Corporation, and former United States

Ambassador Cesar B. Cabrera (collectively, "Plaintiffs"), hereby respond to Defendants'

Statement of Undisputed Material facts dated August 4, 2017, and submit additional material

facts as to which there is no dispute, solely for the purpose of opposing the motion of Defendants

Meister Seelig & Fein LLP ("MSF") and Stephen B. Meister's (together with MSF,

"Defendants") for summary judgment pursuant to Fed. R. Civ. P. 56(a) on the limited issue of

whether Plaintiffs' amended complaint is time-barred under the applicable statute of limitations:


Defendants' Statement

        1.      This matter arises out of the effort by Plaintiffs to obtain a co-developer for, or

sell outright, real property consisting of approximately 65 acres in the Barceloneta municipality

of Puerto Rico ("the property").   Am. Compl. ¶¶ 22-28; a copy of Plaintiffs' Amended

Complaint is annexed to the moving Declaration of Lisa L. Shrewsberry (Shrewsberry Dec.) [dated August 4, 2017 (Dkt. No. 61)] as Exhibit "F."

Plaintiffs' Response

Undisputed, with the clarification that, with respect to 14 of the 65 acres, Plaintiffs owned only an option to purchase the land.  Am. Compl. ¶ 22.

Defendants' Statement

2.     A portion of the Property at one point was encumbered as security in favor of Banco Popular, for a short-term loan and line of credit having a combined face value of approximately $1.5 million (collectively, "the loan"), which came due on October 31, 2011. Am. Compl. ¶ 24 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Undisputed, with the clarification that the October 31, 2011 due date was extended.  Am. Compl. ¶¶ 24, 42.

Defendants' Statement

3.     Plaintiffs and Caribbean Property Group ("CPG") entered a one-year Confidentiality Agreement dated October 26, 2011, which was governed by New York law, in furtherance of discussions regarding a potential sale of the Property or joint venture between the parties. Am. Compl. ¶ 28 (Shrewsberry Dec. Ex. "F"); a copy of such Confidentiality Agreement is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "A."

Plaintiffs' Response

Undisputed, with the clarification that while it was denominated a "Confidentiality Agreement," it was actually a due diligence agreement (Am. Compl. ¶ 30), and it was "a one-year" agreement only in the sense that paragraph 11 provides that "This Agreement shall survive for a period of one (1) year from the date hereof."  Declaration of Lisa L. Shrewsberry Ex. A ¶ 11.

Defendants' Statement

4.       Section 6 of the Confidentiality Agreement states that CPG "agrees that unless and until a definitive agreement between [plaintiffs] and [CPG] with respect to the Transaction has been executed and delivered, neither [plaintiffs], [CPG] or any of their affiliates will be under any legal obligation of any kind whatsoever (express or implied) with respect to such possible Transaction by virtue of this or any other written or oral expression . . . All representations and warranties concerning the Transaction shall be made solely and exclusively in such definitive agreement." (Shrewsberry Dec. Ex. "A", ¶ 6).

Plaintiffs' Response

Undisputed that Paragraph 6 of the Confidentiality Agreement contains the provision quoted in part by Defendants, but state that the provision must be construed in the context of the agreement as a whole, the surrounding circumstances, and the subsequent acts and conduct of the parties.

Defendants' Statement

5.      Plaintiffs were able to renegotiate the due date of the loan with Banco Popular. Am. Compl. ¶¶ 42-45 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Undisputed.

Defendants' Statement

6.      Plaintiffs also negotiated with KRB Universal Investments ("KRB") for a potential sale of the Property to KRB.  Am. Compl. ¶ 52 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Undisputed with respect to the period between October 2012 and February 2013.  Am. Compl. ¶ 52.

Defendants' Statement

7.      By document dated February 14, 2013, a copy of which is annexed to the Declaration of Lisa L. Shrewsberry as Exhibit "B," KRB offered to purchase the Property pursuant to terms that included a 275-day inspection period, which allowed KRB to cancel the transaction at the total cost of $10.00, if KRB decided in its sole discretion that the Property was at all unsuitable for its needs at any time during such period.  (Shrewsberry Dec. Ex. "B," ¶10).

Plaintiffs' Response

Disputed.  The document dated February 14, 2013, a copy of which is annexed to the Declaration of Lisa L. Shrewsberry as Exhibit "B," was a formal, written offer by KRB to purchase the Property for $33.2 million, subject to KRB's confirmation within the 275-day inspection period that the Property was suitable for the specific improvements and project that

KRB then contemplated.  (Shrewsberry Dec. Ex. "B," ¶10.)  In the event that "KRB decided in its sole discretion that the Property was at all unsuitable for its needs at any time during such period" in any other regard, then pursuant to that proposed agreement KRB would forfeit to Plaintiffs the $200,000 (plus interest) that it would have placed into escrow.  (Shrewsberry Dec. Ex. "B," Introductory paragraph and ¶ 8.)

Defendants' Statement

8.     Plaintiffs declined KRB's offer.  Am. Compl. ¶ 56 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Undisputed in that Plaintiffs declined KRB's offer because Plaintiffs had promised CPG that they would decline any intervening offers, like KRB's, made before CPG had made the official binding offer for the Property that it had promised to make in one month.  Am. Compl. ¶¶ 53-56.

Defendants' Statement

9.     CPG never made an offer to purchase the Property.    Am. Compl. ¶59 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Disputed.   CPG had promised to make an official binding offer for the Property in February 2013 (Am. Compl. ¶ 53), explicitly demanded that Plaintiffs detrimentally rely upon that promise as they in fact did (Am. Compl. ¶¶ 54-56), and then failed to honor its promise by failing to make the "official binding offer" it had promised. Am. Compl. ¶ 59.  Under these circumstances, Plaintiffs had a right, under the Puerto Rico doctrine of *culpa in contrahendo*

and/or other tort theories, to a remedy from CPG as though CPG had in fact made an offer to purchase the Property but then failed to honor it.  Am. Compl. ¶¶ 85, 86, 91.


Defendants' Statement

10.    CPG or its affiliate thereafter acquired the loan from Banco Popular, on March 25, 2013 (Am. Compl. ¶ 60; Shrewsberry Dec. Ex. "F"), as part of a larger acquisition of approximately 2,075 loans, with an unpaid principal balance of more than $1 billion, involving 974 properties.  A copy of the letter from CPG's counsel, Kirk Brett, to plaintiffs' then-counsel Kasowitz Benson Torres Friedman LLP ("Kasowitz"), dated September 18, 2015, explaining this information, is annexed to the Declaration of Lisa L. Shrewsberry as Ex. "C."

Plaintiffs' Response

Disputed in part.  Plaintiffs do not dispute that CPG or its affiliate acquired the loan from Banco Popular and that Plaintiffs received notices to that effect dated March 25, 2013 (Am. Compl. ¶ 60), nor do they dispute that Defendants accurately describe the substance of the letter from CPG's counsel annexed to the Declaration of Lisa L. Shrewsberry as Ex. "C," but Plaintiffs lack sufficient knowledge or information on which to form a belief as to the truth of the assertions in CPG's counsel's letter.  Further, an article on Seeking Alpha reflects that CPG's Chief Acquisitions Officer Matt Karp both worked on the acquisition of the 2,075 loans and also was in charge of the loan at issue encumbering Plaintiffs' property in Puerto Rico.  *See* Leggett Dec. Ex. F.

Defendants' Statement

11.     Plaintiffs repaid the loan at par in May 2013. Am. Compl. ¶ 66 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Undisputed to the extent that "at par" means the full amount of principle and interest claimed to be outstanding.  Am. Compl. ¶ 66.

Defendants' Statement

12.     Plaintiffs retained MSF in the late summer of 2013, in an effort to get CPG back to the bargaining table.  Am. Compl. ¶¶ 72-74 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Disputed.  Plaintiffs retained MSF in the late summer of 2013 to represent them "in a dispute with Caribbean Property Group ('CPG') and its affiliates relating to undeveloped acreage in Puerto Rico" (MSF Engagement Letter, Am. Compl. Exhibit A), and while Defendants "claimed that [Stephen Meister's] prior working relationship with CPG would enhance his ability to drive CPG back to the bargaining table, and resolve the dispute without litigation[,] Meister made clear, however, that in the event that a settlement could not be reached, he and his firm would protect Plaintiffs' interests in any potential litigation that might result from the dispute with CPG, up to and including taking Plaintiffs' claims against CPG to trial."  Am. Compl. ¶ 74.

Defendants' Statement

13.     Stephen Meister attempted to get CPG back to the bargaining table, and communicated with Samuel Kirschner of CPG in October 2013.  However, CPG declined to

negotiate with Mr. Meister, on the grounds that CPG never had a legal obligation to make an offer to purchase the Property, never violated the Confidentiality Agreement, and only coincidentally acquired the Barza loan as part of a much larger, unrelated loan portfolio acquisition.  (Affidavit of Stephen B. Meister [ECF No. 62] ¶¶9-10).

Plaintiffs' Response

Disputed.   Plaintiffs admit, on information and belief, that Stephen Meister communicated with Samuel Kirschner of CPG in October 2013, because he told them that he had done so (Am. Compl. ¶ 75), but contrary to Defendants' statement herein, Mr. Meister informed Plaintiffs at the time that, although Mr. Kirschner said that CPG would not entertain purchasing the Property, he stated that it *was* willing to negotiate a settlement payment.  (*Id.*)  Plaintiffs were not present for the conversation between Messrs. Kirschner and Meister, so they lack sufficient knowledge or information on which to admit or deny the "grounds" on which CPG is asserted to have told Meister that they had no obligation to Plaintiffs, but note that grounds set forth here are plausible in that they are the same contentions subsequently asserted by CPG's counsel in his September 18, 1995, letter that is Shrewsberry Dec. Ex. C.  However, the sole support cited for the assertion in Defendants' Statement is paragraph 10 of Mr. Meister's affidavit where he does not correctly identify those grounds as being CPG's contentions but, instead, recites them as supposed facts ("given that …") – facts of which Mr. Meister has no personal knowledge and which Plaintiffs dispute.


Defendants' Statement

14.    Plaintiffs consulted a separate Puerto Rico lawyer, Rafael Sola Diaz, from October 2013 through July 2014, regarding potential bad faith tort claims against CPG under

Puerto Rico law.  Am. Compl. ¶85 (Shrewsberry Dec. Ex. "F"); Deposition Transcript of Cesar Cabrera, dated June 14, 2017, pp. 46-47 (Shrewsberry Dec. Ex. "K"); Deposition Transcript of Guillermo Morales, dated June 20, 2017, pp. 11-12 (Shrewsberry Dec. Ex. "M").

Plaintiffs' Response

Disputed.  Defendants are drawing unjustified inferences from the cited evidence. Amended Complaint paragraph 85 simply says that "by the summer of 2014, Plaintiffs had sought advice from another law firm" that resulted in their forwarding the *Tommy Muniz v. COPAN* case to Defendants on July 27, 2014.  The cited pages from Mr. Cabrera's deposition simply reflects (1) the last line of an email Mr. Cabrera sent to Defendants on October 3, 2014, stating that "I have a local lawyer getting the local legal cases of acting in bad faith," and (2) that he was referring to Rafael Sola Diaz who ultimately provided him with "that one case," *Tommy Muniz.*  And the cited pages of Guillermo Morales's transcript confirm that Mr. Morales had a single contact with Rafael Sola Diaz in or about July 2014 when they discussed that *Tommy Muniz* case – but not "the CPG matter" – before Mr. Morales forwarded it on to Defendants by sending it to Stacey Ashby (*see* Transcript of June 20, 2017 Deposition of Guillermo Morales ("Morales Tr.") 12:14-19 (Shrewsberry Dec. Ex. M)).

The conclusion that those facts establish that Rafael Sola Diaz was working "from October 2013 through July 2014" on researching "potential bad faith tort claims against CPG under Puerto Rico law" is unwarranted.  Rafael Sola Diaz was merely Mr. Cabrera's neighbor who, as an attorney/notary was routinely consulted by Mr. Cabrera and sometimes paid: "he does a lot of notaries.  If I sell a car, driver's license –."  Transcript of June 14, 2017 Deposition of Cesar Cabrera ("Cabrera Tr.") 48:2-6 (Shrewsberry Dec. Ex. K); *see also id.* 29:3-8; 37:18-25 (Shrewsberry Dec. Ex. K).  When CPG purchased Plaintiffs' loan and forced them to pay it

down at full price in May 2013 (*see* Am. Compl. ¶¶ 66-67), Mr. Cabrera imposed upon Rafael
Sola Diaz to accompany the check with a letter asking some of it to be refunded because
Plaintiffs had been in the process of negotiating a reduced payoff with Popular Bank until CPG
purchased the loan.  Cabrera Tr. 37:14-38:3 (Shrewsberry Dec. Ex. K).  But Rafael Sola Diaz
was "a lawyer of another practice, so he's not allowed to go to the Federal Court in San Juan or
New York" and the extent of the legal advice he gave was "Get a good lawyer in New York."
Cabrera Tr. 37:23-38:9 (Shrewsberry Dec. Ex. K).  Defendants were hired four months later.
Am. Compl. Ex. A.

Rafael Sola Diaz was not the Puerto Rico lawyer working feverishly on Puerto Rico legal
strategy while Defendants worked on New York law as Defendants want to suggest.  He was
merely a neighbor who had mentioned the leading Puerto Rico case on the *culpa in contrahendo*
tort (Am. Compl. ¶ 85) and told Plaintiffs to get a New York lawyer.  After Plaintiffs hired
Defendants, they told Defendants that they would get the name of the case from him (the "local
lawyer getting the local legal cases of acting in bad faith") and when they eventually got it from
him they immediately forwarded it to Defendants.  The evidence shows that Plaintiffs were not
relying on anyone to formulate claims – whether under New York law or Puerto Rico law – other
than Defendants and, just as importantly, Defendants point to nothing that would justify them in
thinking otherwise after entering into an engagement letter that was not so limited.  Am. Compl.
Ex. A.[1]

---

[1] We also note that if Defendants, on the basis of nothing more than the sentence in an October 3, 2013 email
(Shrewsberry Dec. Ex. L), truly believed that a Puerto Rico lawyer was formulating claims under Puerto Rico law,
then it does not make sense that they would rush to "negotiate" with CPG a few days later ("in or about early
October 2013," Am. Compl. ¶ 75), without checking with the Puerto Rico lawyer as to the claims that could be
asserted against CPG.  (Meister Tr. 28:17-19 (Leggett Dec. Ex. D); Ashby Tr. 13:16-14:7, 15:3-12 (Leggett Dec. Ex.
A).)  Of course, it did not make sense that Defendants would make the call without doing the research themselves
either—but that is part of the malpractice claim.

Defendants' Statement

15.    By email correspondence dated October 3, 2013, Mr. Cabrera advised Mr. Meister that "I have a local lawyer getting the local legal cases of acting in bad faith." (Shrewsberry Dec. Ex. "L").

Plaintiffs' Response

Undisputed as clarified above in response to Statement No. 14.

Defendants' Statement

16.    Guillermo Morales, plaintiffs' principal representative, discussed the case of *Muniz v. Copan,* 113 D.P.R. 517, 13 P.R. Offic. Trans. 664 (1982) with Attorney Sola Diaz (Shrewsberry Dec. Ex. "M," pp. 11-12).

Plaintiffs' Response

Undisputed. *Muniz v. Copan* is the seminal case in Puerto Rico with respect to *culpa in contrahendo* torts and Mr. Morales testified that he discussed the case – but not the CPG dispute – with Mr. Sola Diaz before forwarding the case to Defendants and asking for their thoughts as to its applicability to the CPG dispute. (Shrewsberry Dec. Ex. M, pp. 11-12; Affidavit of Stephen B. Meister dated August 4, 2017 ("Meister Aff.") [ECF No. 62] Ex. A.)

Defendants' Statement

17.    Thereafter, in July 2014, plaintiffs asked MSF for their thoughts regarding a potential claim against CPG for *culpa in contrahendo*. Am. Compl. ¶ 85 (Shrewsberry Dec. Ex. "F"). Specifically, Mr. Morales contacted MSF on July 27, 2014 about the *Muniz v. Copan* case, after discussing it with Attorney Sola Diaz. (Shrewsberry Dec. Ex. "M", p. 13).

Plaintiffs' Response

        Undisputed in accordance with the response to Statement No. 16.


Defendants' Statement

        18.     On July 28, 2014, MSF responded by advising plaintiffs that any such potential tort claims against CPG were time-barred.  Am. Compl. ¶88 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

        Disputed, insofar as it is unclear what "potential tort claims" are being referred to.  The Amended Complaint pleads that Defendants advised that the *culpa in contrahendo* claim was time-barred.  (Am. Compl. ¶ 88.)  Defendants, however, denied that allegation.  (Amended Answer to First Amended Verified Complaint (Shrewsberry Dec. Ex. G) ¶ 88.)  Moreover, neither of the Defendants recalled specifically advising plaintiffs as to the statute of limitations on the *culpa in contrahendo* claim; instead, both of them were sure that they advised Plaintiffs that the tort was not applicable to CPG given the facts presented—thus giving an opinion as to Puerto Rico law that Defendants elsewhere contend to have been beyond the scope of their engagement and beyond their expertise.  *See* Transcript of June 15, 2017 Deposition of Stephen B. Meister ("Meister Tr.") 16:21-17:6 (Leggett Dec. Ex. B); Transcript of June 15, 2017 Deposition of Stacey Ashby ("Ashby Tr.") 27:23-28:16 (Leggett Dec. Ex. A).


Defendants' Statement

        19.     Plaintiffs picked up their legal file from MSF in September 2014. (Aff. of Stephen Meister ¶12).

Plaintiffs' Response

      Undisputed.


Defendants' Statement

      20.     On behalf of plaintiffs, Guillermo Morales discussed with Kasowitz a potential claim against MSF by plaintiffs at least as early as August 2015.  (Shrewsberry Dec. Ex. "M", pp. 17-18).

Plaintiffs' Response

      Disputed.  Mr. Morales testified not that they discussed any particular "claim" but, rather, he answered "yes" to the question from Defendants' attorney: "Did you have a conversation with Jennifer Recine [of Kasowitz] in August 2015 about a potential *lawsuit* against Meister?" Morales Tr. (Shrewsberry Dec. Ex. M) at 18:19-23 (emphasis added).  The question followed Mr. Morales explaining that the topic of the conversation was the recent discussions Ms. Recine had with both Stephen Meister and Stacey Ashby which caused Ms. Recine to have "had reservations [about] what they were saying."  *Id.* 18:7-16.  *See also* September 18, 2017 Affidavit of Guillermo Morales ("Morales Aff.") at ¶ 3 (affirming that 'Ms. Recine also told me that inconsistencies in what she had been told during those telephone conversations [with Defendants] caused her to believe, based on nothing more than what she called her 'spidey senses,' that it might bear looking more closely as to what exactly MSF had done with respect to Plaintiff' claims against CPG.  But she was unable at that point to identify anything that MSF had done wrong.").  No follow-up questions were asked to ascertain whether that "conversation . . . about a potential lawsuit" amounted to anything more specific than "I get the feeling that they're hiding something but don't yet know what it could be."  Shrewsberry Dec. Ex. M.

Indeed, Defendants know that the conversation could not have been more specific than that because they recognized that "In the First Amended Complaint, Kasowitz takes great pains to explain that they did not immediately recognize a potential claim for legal malpractice against MSF in April 2015, or at any time until November 2015, because they did not have access to the MSF billing records until such time. Am. Compl. ¶¶ 98-104." So-ordered letter dated December 9, 2016, from to the Court [ECF No. 25] at p. 2. Kasowitz's time records corroborate the fact that the August 2015 meeting was not the culmination of any investigation into a possible malpractice claim, but merely the beginning. Leggett Dec. Ex. F.[2]

Defendants' Statement

21.     All plaintiffs are citizens of Puerto Rico (Am. Compl. ¶¶ 14-16); Shrewsberry Dec. Ex. "F"), and all defendants are citizens of New York. (Aff. of Stephen Meister ¶ 2).

Plaintiffs' Response

Undisputed as to Plaintiffs and Undisputed on information and belief as to Defendants.

Defendants' Statement

22.     A one-year statute of limitations under the law of Puerto Rico, as imported by CPLR 202, governs the claims herein against MSF. Am. Compl. ¶105 (Shrewsberry Dec. Ex. "F").

---

[2] Kasowitz subsequently sought to withdraw once it learned that some of Defendants' bills were actually in Plaintiffs' possession (albeit unknowingly), ostensibly because that was contrary to what it had pleaded in the Complaint, but was more likely motivated by Defendants' motion to disqualify them which loudly accused them of malpractice in representing Plaintiffs. *See* Shrewsberry Dec. Ex. J (January 20, 2017, email providing the purported reasons for withdrawal) and the December 9, 2017, letter to the Court [ECF No. 25] (accusing Kasowitz of malpractice); Meister Declaration dated February 7, 2017 [ECF No. 37] ¶¶ 8-11 (same). But the inaccuracy in the pleading, the fact that Plaintiffs actually had received some of the billing records prior to November 2015, does nothing to undermine Kasowitz's position that it had not seen them and did not recognize any potential malpractice claim until November 2015 and, therefore, that they could not have been discussing any particular claim with Mr. Morales in August 2015.

Plaintiffs' Response

Disputed.  Under CPLR § 202, Plaintiffs' claims that accrued outside of New York will be barred by the shorter of the New York and Puerto Rico statutes of limitations (giving effect to the respective states' rules for accrual and tolling).  As to Plaintiffs' tort claims, the shorter of the statutes of limitations is Puerto Rico's one-year statute.  Am. Compl. ¶ 105.  However, as to Plaintiff's contract claims, the Puerto Rico statute of limitations is 15 years (31 P.R. Laws Ann. ¶ 5294) and so New York's 6-year statute is shorter (CPLR § 213).

Defendants' Statement

23.     Plaintiffs commenced this action by filing a complaint [Doc. No. 1] in the United States District Court for the Southern District of New York on October 4, 2016.  (Shrewsberry Dec. Ex. "D").

Plaintiffs' Response

Undisputed.

Defendants' Statement

24.     MSF responded to the original complaint by letter, dated October 31, 2016 [Doc. No. 13], seeking permission from this Court to move, before answering or conducting discovery, to dismiss the original complaint on statute of limitations grounds.  (Shrewsberry Dec. Ex. "E").

Plaintiffs' Response

Undisputed.

Defendants' Statement

25.     Plaintiffs addressed MSF's position by filing an amended complaint [Doc. No. 18] on November 18, 2016, asserting new allegations that plaintiffs did not "discover" their claim against MSF until November 2015, because their then counsel Kasowitz, was unable to analyze whether any causes of action by plaintiffs against MSF lied [sic] without first reviewing MSF's billing records, and that MSF had never sent any bills to them, and actually refused to do so, until Kasowitz was able to obtain MSF's bills from MSF in November 2015.  Am. Compl. ¶¶ 9, 98-99 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Undisputed subject to the following clarification.  According to Kasowitz, which filed the Amended Complaint, it "addressed MSF's position" in the sense of making "it more difficult to dismiss on the basis of the statute of limitations."  Shrewsberry Dec. Ex. J.


Defendants' Statement

26.     Two months after the amended complaint was filed, Kasowitz advised the Court by Declaration [Doc. No. 32] and letter [Doc. No. 33], both dated January 30, 2017 (Shrewsberry Dec. Exs. "H" and "I"), that they were withdrawing paragraphs 9, 98 and 99 from the amended complaint because they contained false statements of fact.

Plaintiffs' Response

Disputed.   Neither of those documents state that Kasowitz was withdrawing those paragraphs "because they contained false statements of fact."  Kasowitz stated only that "in our view, Rule 3.3 of the New York Rules of Professional Conduct required the Firm to correct

certain representations made to the Court in paragraphs 9, 98 and 99 of the Verified Amended Complaint by withdrawing them." Shrewsberry Dec. Ex. H ¶ 4.

Defendants' Statement

27.     The false statements of fact sought to be withdrawn and corrected by plaintiffs via their then-counsel Kasowitz were that MSF had only sent its bills for the first time to plaintiffs in November 2015, and that a review of the MSF bills was necessary to analyze whether plaintiffs had a claim against MSF.  Am. Compl. ¶¶ 9, 98, 99 (Shrewsberry Dec. Ex. "F").

Plaintiffs' Response

Disputed.  (We note that Defendants cite no authority for the assertion that the entirety of the paragraphs Kasowitz sought to withdraw were "false").   The paragraphs were inaccurate only in the sense that they alleged that none of Defendants' invoices had been received by Plaintiffs before November 2015 when, in fact (but unbeknown to Kasowitz), Plaintiffs had received contemporaneous emails transmitting Defendants' October 15, 2013, November 12, 2013, and August 19, 2014 invoices (Leggett Dec. Ex. C), but did not recall having seen them before the Amended Complaint was filed.  Morales Aff. ¶ 4.  The paragraphs were accurate in that the invoices for December 5, 2013, June 10, 2014 and July 11, 2014, were not received from Defendants until November 10, 2015.  Cabrera Tr. 51:15-61:15 (he had received only 3 of 6 invoices) (Shrewsberry Dec. Ex. K); Morales Tr. 18:24-19:7 (not recalling seeing any invoices) (Shrewsberry Dec. Ex. M.).  And the paragraphs were accurate to the extent that they asserted that Kasowitz concluded that "a review of the MSF bills was necessary to analyze whether plaintiffs had a claim against MSF" as evidenced by the fact that Kasowitz did not seek to withdraw the allegations that explained how Kasowitz pieced together Defendants' malpractice

from those bills after it saw them for the first time in November 2015.  *See* Am. Compl. ¶¶ 100-105.

Defendants' Statement

28.     Transmission emails produced in discovery by the parties show that MSF's bills had been sent monthly to plaintiffs, such that they had the bills before November 2015.  The six MSF billing statements were sent by MSF to Cesar Cabrera at his email address – cabreracb@hotmail.com on or about October 15, 2013, November 12, 2013, December 5, 2013, June 10, 2014, July 11, 2014 and August 19, 2014, and are attached to the moving affidavit of Stephen B. Meister, with transmission emails, as Exhibits "B" through "G", respectively.

Plaintiffs' Response

Disputed.  The transmittal emails purportedly sending MSF's invoices for June 10, 2014 and July 11, 2014 to Cesar Cabrera are undated, and the invoice for December 5, 2013 is not attached to any email, and no such emails providing these invoices have been located within Mr. Cabrera's emails.  *See* moving affidavit of Stephen B. Meister at Exhibits D, E, F; Morales Aff. ¶ 4.  The other invoices were apparently sent to Plaintiffs on or about the dates indicated.  Morales Aff. ¶ 4.

**PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

Plaintiffs' Statement

29. Defendants are not residents of Puerto Rico, do not maintain offices in Puerto Rico, and each has spent less than 365 days in Puerto Rico between July 28, 2014, and October 4, 2016. Meister Aff. ¶¶ 2, 5.

Defendants' Response

    Undisputed.

Plaintiffs' Statement

    30. Plaintiffs asked Defendants to send a demand letter to CPG and Defendants agreed to do so (Am. Compl. ¶ 78), but in fact never sent such a letter (Am. Compl. ¶ 79; Meister Tr. 31:7-22).

Defendants' Response

    Disputed that such request was made, but undisputed that such letter was never sent, and respectfully refer to the deposition testimony cited by plaintiffs for the true and correct contents of same.

Plaintiffs' Statement

    31. Had Defendants sent the demand letter to CPG as promised (Am. Compl. ¶ 78), and properly drafted it to constitute an "extrajudicial demand" under Puerto Rico law, it would have restarted the statute of limitations applicable under Puerto Rico law (Am. Compl. ¶ 79).

Defendants' Response

    This statement is improper as it constitutes a conclusion of law.

Plaintiffs' Statement

    32. The written terms by which Plaintiffs had engaged Defendants confirmed "the Ambassador's retention of our Firm to represent him and his affiliates in a dispute with Caribbean Property Group ("CPG") and its affiliates relating to undeveloped acreage in Puerto Rico" and neither provided that such retention was with respect to issues under New York law only, nor excluded issues arising under Puerto Rico Law.  Ex. A to Am. Compl. (Shrewsberry Dec. Ex. F).

Defendants' Response

Disputed, with reference to the language of the Retention Agreement for the true and correct contents of same.  (Ex. "A" to Am. Compl.).

Plaintiffs' Statement

33. Within one month of being retained by Plaintiffs, Defendants attempted to "negotiate" a resolution of Plaintiffs' dispute with CPG by making a single phone call to an individual at CPG with whom Stephen Meister was already familiar by reason of having represented CPG in the past.  Am. Compl. ¶¶ 74-76.

Defendants' Response

Disputed, as such phone call was among the efforts taken by MSF to effect a resolution. (Meister Tr. 5:23-13:13; 19:13-21:24) (Leggett Dec. Ex. "B"); Ashby Tr. 6:4-18:18 (Leggett Dec. Ex. A").

Plaintiffs' Statement

34. At the time that Defendants had made the phone call to CPG referenced in Statement No. 33, Defendants had done no research as to what claims might be asserted against CPG under Puerto Rico law, had consulted no Puerto Rico attorney, and had not even concluded their analysis of the claims that could be asserted against CPG under New York law.  (Meister Tr. 21:9-24; 28:17-19 (Leggett Dec. Ex. B); Ashby Tr. 13:16-14:7, 15:3-12 (Leggett Dec. Ex. A); Meister Dec. Exs. B-C (October 15, 2013 and November 12, 2013 MSF invoices)).

Defendants' Response

Disputed, and respectfully refer to the deposition testimony cited by plaintiffs for the true and correct contents of same.

Plaintiffs' Statement

35. After the single phone call referenced in Statement No. 33, there were no further written or oral communications between Defendants and CPG concerning Plaintiffs.   Am. Compl. (Shrewsberry Dec. Ex. F).

Defendants' Response

Undisputed.

Plaintiffs' Statement

36. Notwithstanding Defendants' claims that they only represented Plaintiffs with respect to claims under New York law, Defendants advised Plaintiffs regarding tort claims under Puerto Rico law.  Leggett Dec. Ex. E (Ashby Deposition Exhibit 1).

Defendants' Response

Disputed, as the only advice regarding "tort claims under Puerto Rico law" was limited to a specific request by Mr. Morales to review and consider the case of *Muniz v. Copan,* 113 D.P.R. 517, 13 P.R. Offic. Trans. 664 (1982), which was sent to plaintiffs by their Puerto Rico lawyer. Am. Compl. ¶¶85-88.

Dated: New York, New York
October 6, 2017

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP
*Attorneys for Defendants*

By: _____
Lisa L. Shrewsberry  (LS 1597)
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
(914) 347-2600