UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BARZA DEVELOPMENT CORP., ZUMON
CORPORATION and UNITED STATES
AMBASSADOR CESAR B. CABRERA
RETIRED,

                              Plaintiffs,                    16-cv-7763 (PKC)

            -against-                                        MEMORANDUM
                                                            AND ORDER

MEISTER SEELIG & FEIN LLP and STEPHEN
B. MEISTER,

                              Defendants.
----------------------------------------------------------x

CASTEL, U.S.D.J.

            Plaintiffs bring legal malpractice and breach of fiduciary duty claims against the

law firm Meister Seelig & Fein LLP and one of its attorneys, Stephen B. Meister (collectively,

"Meister Seelig").  Plaintiffs retained Meister Seelig to negotiate with a potential business

partner, Caribbean Property Group ("CPG"), and possibly assert claims against CPG.  Plaintiffs

allege that Meister Seelig failed to bring a legal action against CPG before the limitations period

expired, and seek $33 million in damages for legal malpractice.

            Cesar Cabrera is a plaintiff, and he owns and controls plaintiffs Barza

Development Corp. and Zumon Corporation.  After filing the First Amended Verified Complaint

(the "Complaint"), which Cabrera signed under penalty of perjury, plaintiffs' then-attorneys

from Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz") moved to withdraw, and stated

that, "based on new information," Kasowitz was "required . . . to correct certain representations

to the Court made in paragraphs 9, 98 and 99 of the Verified Amended Complaint, by

withdrawing them."  (Docket # 32 ¶ 4.)  Those allegations related to the timeliness of this action.

The Court set a schedule for discovery limited to the issue of whether plaintiffs' claims against Meister Seelig are time-barred, and granted defendants leave to thereafter move for summary judgment pursuant to Rule 56, Fed. R. Civ. P.  (Docket # 42, 57.)

The Court has reviewed the record submitted in connection with this motion, and concludes that no reasonable jury could find that plaintiffs timely brought this action within Puerto Rico's one-year limitations period, which governs their claims.  The summary judgment record contains evidence that no later than July 2014, Meister Seelig informed plaintiffs of its conclusion that any claim against CPG would not be meritorious and was also time-barred.  Shortly thereafter, plaintiffs retrieved the files from Meister Seelig and ceased to rely on the firm for legal advice.  Assuming arguendo that Meister Seelig's performance could constitute legal malpractice, the summary judgment record contains uncontradicted evidence that plaintiffs knew of their injury and its source no later than July 2014.  There is no evidence that plaintiffs exercised diligence to investigate or pursue their claims.  Moreover, there is no evidence that Meister Seelig misled plaintiffs about its legal services.  Meister Seelig's motion for summary judgment is therefore granted.

BACKGROUND.[1]

Plaintiffs Barza Development Corp. ("Barza") and Zumon Corporation ("Zumon") are real-estate development companies owned and controlled by plaintiff Cesar B. Cabrera.  Plaintiffs' claims originate with an unconsummated real-estate transaction in the town of Barceloneta in Puerto Rico.  Plaintiffs acquired 65 acres of real property (the "Property") and tried to find either a co-developer or a purchaser for the land.  (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1.)

---

[1] The Court summarizes the background facts to the extent that they provide context for the current summary judgment motion.  For clarity and economy, certain details about plaintiffs' dealings with CPG have been omitted, but they have been reviewed and considered by the Court.

Plaintiffs entered into a one-year confidentiality agreement with CPG, during which time CPG was to perform due diligence as to either purchasing the Property outright or entering into a joint venture with plaintiffs.  (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.)  CPG never made an offer for the Property, and the parties went their separate ways.  (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.)

Plaintiffs contend that they suffered negative business consequences due to their fruitless negotiations with CPG, including plaintiffs' decision to decline a competing offer on the Property in the amount of $33.2 million.  (Def. 56.1 ¶¶ 6-7; Pl. 56.1 ¶¶ Resp. 6-7.)  Plaintiffs assert that they declined the offer because of the terms of their confidentiality agreement with CPG.  (Def. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8.)

In September 2013, after their negotiations with CPG fell through, plaintiffs retained defendant Meister Seelig to represent them in connection with their dealings with CPG, including potential negotiations and litigation.  (Def. 56.1 ¶ 12; Pl. 56.1 Resp. ¶ 12.)  On behalf of plaintiffs, Stephen Meister attempted to re-start negotiations with a CPG executive, who declined further discussion.  (Def. 56.1 ¶ 13; Pl. 56.1 Resp. ¶ 13.)

Plaintiffs simultaneously consulted with a local Puerto Rico attorney, Rafael Sola Diaz, from approximately October 2013 to July 2014.  (Def. 56.1 ¶ 14; Pl. 56.1 Resp. ¶ 14.)  Sola Diaz conducted research into possible tort claims against CPG, including bad-faith claims, although Cabrera describes Sola Diaz as "merely" a neighbor who sometimes acted as his notary public.  (Pl. 56.1 Resp. ¶ 14; Def. 56.1 ¶¶ 15-16; Pl. 56.1 Resp. ¶¶ 15-16.)  Cabrera nevertheless paid legal fees to Sola Diaz and testified that Sola Diaz gave him "local legal advice" and provided legal services to plaintiff Barza.  (Cabrera Tr. 38, 45, 48.)  Sola Diaz also communicated with plaintiffs through an individual named Guillermo Morales, who describes

himself as plaintiffs' "agent."[2]  (Morales Aff't ¶ 1.)  Sola Diaz and Morales specifically

discussed a tort doctrine known as <u>culpa</u> <u>in</u> <u>contrahendo</u>, which, under Puerto Rico civil law,

requires parties to a potential contract to negotiate in good faith.  (Def. 56.1 ¶¶ 16-17; Pl. 56.1

Resp. ¶¶ 16-17.)

On or about July 28, 2014, Meister Seelig advised plaintiffs that any <u>culpa</u> <u>in</u>

<u>contrahendo</u> claim would be unsuccessful.  (Def. 56.1 ¶ 18; Pl. 56.1 Resp. ¶ 18.)  According to

plaintiffs' First Amended Verified Complaint, which was signed by Cabrera under penalty of

perjury, in that conversation, Meister Seelig partner Stacey Ashby told plaintiffs that "the statute

of limitations had run as to the <u>culpa</u> <u>in</u> <u>contrahendo</u> claim."  (Compl't ¶ 88.)

Plaintiffs allege that, in truth, Meister Seelig pursued a "scheme to defraud"

plaintiffs, and "quickly abandoned" them. (Compl't ¶¶ 55-62, 73-74.)  According to the

Complaint, any tort claim that plaintiffs had against CPG expired on February 14, 2014, without

any action by Meister Seelig to bring a claim or preserve plaintiffs' ability to do so.  (Compl't ¶¶

81, 86.)  Plaintiffs allege that over the summer of 2014, Meister Seelig learned that viable claims

against CPG had lapsed, and, in order to "lull" plaintiffs into ignoring the law firm's purported

malpractice, advised plaintiffs that such a claim would not succeed and had become untimely.

(Compl't ¶¶ 85-91.)

The Verified First Amended Complaint initially alleged that plaintiffs only

discovered Meister Seelig's purported malpractice in October 2015, after they retained Kasowitz

and reviewed late-submitted invoices from Meister Seelig.  (Compl't ¶¶ 95-105.)  Plaintiffs have

---

[2] Morales was not employed by the plaintiff companies and apparently had no titled position with them.  In his
deposition, Morales stated that he has been an employee of the federal government for 10-1/2 years, but he refused
to disclose his job, stating that a nondisclosure agreement prevents him from doing so.  (Morales Dep. at 5-6.)  He
stated that he has never been employed by any plaintiff, and his relationship with plaintiff Cabrera "was solely as a
consultant" on real-estate matters.  (Morales Dep. at 6-7.)  Morales testified that he has a bachelor's degree in
political science, and it does not appear that he has a legal education or is an attorney.  (Morales Dep. at 5.)

since withdrawn their allegations about review of the invoices, and it is undisputed that at least

some invoices were timely submitted by Meister Seelig but were ignored or overlooked by

plaintiff Cabrera.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit

under the governing law. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a

motion for summary judgment, the court must "construe the facts in the light most favorable to

the non-moving party and resolve all ambiguities and draw all reasonable inferences against the

movant."  Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks

omitted).

It is the initial burden of the movant to come forward with evidence on each

material element of his claim or defense, demonstrating that he is entitled to relief, and the

evidence on each material element must be sufficient to entitle the movant to relief in its favor as

a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

If the moving party meets its burden, "the nonmoving party must come forward with admissible

evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."

Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).  "A dispute regarding a

material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting

Anderson, 477 U.S. at 248).

DISCUSSION.

> I.      Plaintiffs' Claims Are Governed by Puerto Rico's One-Year Limitations
>         <u>Period.</u>

Plaintiffs are citizens of Puerto Rico and that defendants are citizens of New

York, and the amount in controversy exceeds the jurisdictional threshold.  (<u>See</u>, <u>e.g.</u>, Compl't ¶¶

14-18; Pl. 56.1 ¶ 29; Def. 56.1 Resp. ¶ 29.)  Subject matter jurisdiction is premised on diversity

of citizenship, 28 U.S.C. §1332.  (Compl't ¶ 11.)

A court sitting in diversity applies the forum state's choice-of-law rules to

determine the limitations period.  <u>See</u>, <u>e.g.</u>, <u>Thea v. Kleinhandler</u>, 807 F.3d 492, 497 (2d Cir.

2015).  "New York's borrowing statute, N.Y. C.P.L.R. 202, provides that 'when a nonresident

plaintiff sues upon a cause of action that arose outside of New York, the court must apply the

shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or

(2) the state where the cause of action accrued.'"  <u>Id.</u> (quoting <u>Stuart v. Am. Cyanamid Co.</u>, 158

F.3d 622, 627 (2d Cir. 1998)); <u>see also</u> <u>Norex Petroleum Ltd. v. Blavatnik</u>, 23 N.Y.3d 665, 668

(2014) ("When a cause of action accrues outside New York and the plaintiff is a nonresident,

section 202 'borrows' the statute of limitations of the jurisdiction where the claim arose, if

shorter than New York's, to measure the lawsuit's timeliness.").  "[W]hen borrowing foreign law

pursuant to CPLR 202, foreign tolls and extensions must be imported, too."  <u>Id.</u> at 676.

Puerto Rico has a one-year limitations period for claims of professional

malpractice, and New York has a three-year limitations period for non-medical professional

malpractice claims.  P.R. Laws Ann. tit. 31, §§ 5298(2); CPLR 214(6).  The parties agree that

because plaintiffs are citizens of Puerto Rico and their alleged injuries arose in Puerto Rico,

plaintiffs' claims are governed by Puerto Rico's limitations period.  (Compl't ¶ 105; Pl. Mem. at

10; Def. Mem. at 14-15.)  The Court therefore applies Puerto Rico's limitations period, as well as
its law governing tolling.  Norex, 23 N.Y.3d at 668, 676.

        The Complaint asserts two causes of action.  Count One alleges legal malpractice
and Count Two alleges breach of fiduciary duty.  Plaintiffs do not dispute that, to the extent their
legal malpractice claim is premised on professional negligence, Puerto Rico's one-year
limitations period governs both claims.  See P.R. Laws Ann. tit. 31, §§ 5298(2) (one-year
limitations period for actions "arising from the fault or negligence mentioned in § 5141 . . . ."),
5141 (establishing torts based on "fault or negligence"); see also Heck-Dance v. Cardona-
Jimenez, 102 Fed. App'x 171, 172 (1st Cir. 2004) (applying Puerto Rico's one-year limitations
period to legal malpractice claim) (summary order); Chicago Title Ins. Co. v. Sotomayor, 394 F.
Supp. 2d 452, 461 (D.P.R. 2005) (applying one-year limitations period to claim of notary
malpractice).

        Therefore, for plaintiffs' claims to be timely under the one-year limitations
period, the limitations period must have commenced within one year of this action's
commencement on October 4, 2016.

        II.     <u>Puerto Rico Law Governing Tolling of the Limitations Period.</u>

        The parties dispute the point in time at which plaintiffs gained knowledge that
defendants allegedly committed legal malpractice, thus commencing the running of the
limitations period.  Plaintiffs assert that they did not learn of potential claims against defendants
until December 2015, after they retained Kasowitz and reviewed Meister Seelig's billing records
for the first time.  (Morales Dec. ¶ 5.)  Meister Seelig argues that earlier communications gave
plaintiffs knowledge sufficient to start the limitations period, including a July 2014 discussion
with Meister Seelig about the viability of any <u>culpa</u> in <u>contrahendo</u> claim.  (Def. Mem. at 16-18.)

- 7 -

Puerto Rico law provides that the limitations period on a tort claim begins to run only when a plaintiff has knowledge of both the underlying injury and the source of that injury. Colon Prieto v. Geigel, 115 D.P.R. 232, 15 P.R. Offic. Trans. 313, 329-30 (P.R. 1984). The Puerto Rico Supreme Court has described this as a "subjective" standard, one that avoids "a literal and narrow reading" of a plaintiff's knowledge. Id. at 327. In Colon Prieto, following wisdom tooth extractions, the plaintiff's dentist repeatedly told him that any lingering pain was due to plaintiff's habit of biting his own mouth; after a year of discomfort, plaintiff consulted with physicians who concluded that the dentist had severed a nerve in plaintiff's tongue during the wisdom tooth procedure. Id. at 329. Despite plaintiff's knowledge of his own pain and its close proximity to the wisdom tooth extraction, the limitations period for any claim against the dentist did not begin to run until plaintiff learned that the dentist was his injury's source. Id. at 329-30.

The First Circuit has applied and discussed Colon Prieto on several occasions. It has concluded that Puerto Rico law does not require definitive knowledge of an injury's origin when, through due diligence, a plaintiff could discover it. Villarini-Garcia v. Hosp. Del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993) (citing Colon Prieto, 115 D.P.R. at 245); see also Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 14 (1st Cir. 2005) ("it is enough that the would-be plaintiff had notice that would have led a reasonable person to investigate and so uncover the needed information."). In Villarini-Garcia's medical malpractice context, this turns on "how much diligence should be expected of a reasonable lay person." Id. A plaintiff need only know "the facts that gave rise to the claim, not their full legal implications." Id. at 85. Similarly, a plaintiff need only be aware of the basic fact of an injury and not its entire scope or damage, and a delay based on a plaintiff's "'subjective appraisal and judgment'" will not

postpone the running of the limitations period. <u>Rodriguez-Suris v. Montesinos</u>, 123 F.3d 10, 13 (1st Cir. 1997) (quoting <u>Ortiz v. Municipio De Orocovis</u>, 113 P.R. Dec. 484, 487, 13 P.R. Offic. Trans. 619, 622 (P.R. 1982)).

   The First Circuit surveyed Puerto Rico authority and identified three considerations for determining the commencement of the limitations period. First, under <u>Colon Prieto</u>, the limitations period begins to run when a plaintiff has personal, subjective knowledge of an injury and the identity of the tortfeasor. <u>Rodriguez-Suris</u>, 123 F.3d at 15. Second, <u>Colon Prieto</u> suggests that "if a plaintiff's ignorance of an injury and its origin was due to the plaintiff's own negligence or lack of care, then the statute of limitation would not be tolled." <u>Id.</u> This means that if, through the exercise of due care, a plaintiff could have learned of both the injury and its source, the plaintiff must timely pursue the claim or risk that it will be relinquished as time-barred. <u>Id.</u> at 16. Third, "[i]f a plaintiff's suspicions that she may have been the victim of a tort are assuaged by assurances made by the person who caused the injury, a plaintiff will not be held responsible for failing to pursue her claim more aggressively." <u>Id.</u> (citing <u>Colon Prieto</u>, 15 P.R. Offic. Trans. at 329-30).

   <u>Colon Prieto</u> afforded significant weight to the false explanations of plaintiff's dentist, who had a position of trust and repeatedly assured the plaintiff that his pain was not due to the wisdom-tooth extraction. <u>Id.</u> at 16-17 (citing <u>Colon Prieto</u>, 15 P.R. Offic. Trans. at 329-30). As summarized by the First Circuit:

> Stated another way, the condition attached to a plaintiff's right of tolling – the condition that she act with care to make additional inquiries once she is on notice – does not apply (or is excused, or negated) when the plaintiff reasonably relies on what others told her. The reliance, however, must be reasonable, and the determination of the reasonableness of a plaintiff's reliance on the assurances of others involves an evaluation that, depending upon the

> circumstances, may or may not be a question for the finder of fact,
> and thus may or may not preclude summary judgment

Id. at 17.

III.    Plaintiffs' Tort Claims Are Time-Barred.

The Court has reviewed the record submitted in connection with this motion, and

has located only one statement that identifies a precise date where plaintiffs learned that any

culpa in contrahendo claim against CPG had become time-barred.  It is set forth in paragraph 88

of plaintiffs' First Verified Amended Complaint, which describes a phone call with Stacey

Ashby, a partner in the Meister Seelig firm:

> On the July 28, 2014 call, however, Ms. Ashby merely told Plaintiffs
> that they did not have any viable cause of actions, because the statute
> of limitations had run as to the *culpa in contrahendo* claim.
> Defendants purposefully failed to inform Plaintiffs of material facts
> concerning *when* the statute of limitations had run or how Plaintiffs
> *had* a viable tort claim against CPG when Defendants were retained,
> but that it had lapsed due to Defendants' negligence.  Thus, Plaintiffs
> reasonably believed that their claims against CPG expired through
> no fault of Defendants.

The Complaint's verification is signed by plaintiff Cabrera under penalty of perjury and states in

part "that I have read the forgoing First Amended Complaint, and that the allegations contained

therein are true and correct to the best of my knowledge, information and belief."  (Compl't

Verification.)

Typically, "[a]llegations in a complaint are not evidence, and a party cannot

defeat a motion for summary judgment by relying on allegations in the pleading."  Tencza v.

TAG Court Square, LLC, 2013 WL 2449178, at *8 (S.D.N.Y. June 6, 2013) (Engelmayer, J.).

But "[a] verified complaint is to be treated as an affidavit for summary judgment purposes, and

therefore will be considered in determining whether material issues of fact exist . . . ."  Colon v.

Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); accord Monahan v. New York City Dep't of Corr.,

214 F.3d 275, 292 (2d Cir. 2000) ("It is true that a verified complaint may serve as an affidavit for summary judgment purposes provided it meets the other requirements for an affidavit under Rule 56(e)."); Curtis v. Cenlar FSB, 654 Fed. App'x 17, 20-21 (2d Cir. 2016) (factual allegations in a verified complaint are treated as an affidavit on a summary judgment motion, but allegations therein brought on information and belief are treated only as speculation) (summary order); Neal v. Wilson, 2017 WL 4129635, at *7 (S.D.N.Y. Sept. 15, 2017) (considering both plaintiff's deposition testimony and fact allegations based on personal knowledge as asserted in a verified complaint) (Abrams, J.).

Because the verified complaint was signed by Cabrera under penalty of perjury, it is the equivalent of an affidavit for the purposes of this summary judgment motion, to the extent that it contains statements of fact based on Cabrera's personal knowledge.  Monahan, 214 F.3d at 292.  Its factual allegation concerning the July 28, 2014 conversation is therefore part of the summary judgment record.

The summary judgment record contains additional evidence that in or around the summer of 2014, plaintiffs discussed the viability of a culpa in contrahendo claim with their attorneys at Meister Seelig, and were told that such a claim would fail.  In deposition testimony, witnesses were sometimes uncertain as to the precise dates and contents of certain conversations, but they uniformly recalled that Meister Seelig told plaintiffs that a culpa in contrahendo claim would not be meritorious.  That evidence is consistent with Cabrera's assertion in the verified complaint.

Ashby testified that in a call with Cabrera and Morales on July 28, 2014, she told them that "the case" governing culpa in contrahendo "didn't apply to their circumstances."

(Ashby Dep. 27-28.)  She testified that "[w]e might have" discussed the limitations period, but that she was not certain.  (Ashby Dep. 28.)

Stephen Meister testified that in the summer of 2014 he told plaintiffs that they lacked a viable claim against CPG, both on the merits and on timeliness grounds.  According to Meister, in May 2014, he told Cabrera and Morales that they did not have a meritorious breach of contract claim against CPG, after which a Puerto Rico lawyer whose name began with S contacted him to discuss culpa in contrahendo law.  (Meister Dep. at 13-14.)  Meister testified that he reviewed the merits of such a claim and concluded that it "was complete garbage." (Meister Dep. 14-17.)   He testified, "We asked about or we thought about the statute of limitations, as any lawyer would, because we were now in tort territory, right."  (Meister Dep. 14.)  Meister testified that he e-mailed Morales inquiring about the limitations period, and Morales cited the fifteen-year limitations period on breach of contract claims, "which is obviously not what we were asking because we knew we were now outside the world of contractors, a one year statute."  (Meister Dep. 15-16.)  Meister testified that "sometime after May," he had a conversation with Cabrera and Morales, which he summarized as follows: "With regard to this new issue, they raised of the Culpa claim, we said that claim doesn't lie.  Either the facts are not remotely similar.  CPG was perfectly within its rights not to make an offer, and to the extent it had made this oral promise, it was – it still didn't rise to the level of a Culpa claim, and in any event, was precluded by the Confidentiality Agreement.  And it had a separate statute problem because there's a one-year statute applicable to tort claims, as you undoubtless know, in Puerto Rico."  (Meister Dep. 16-17.)  "So we said, you know, there is no claims to bring.  And that's how it ended."  (Meister Dep. 18.)

In the summer of 2014, Cabrera and Morales discussed <u>culpa</u> <u>in</u> <u>contrahendo</u> law with Cabrera's neighbor and attorney, Sola Diaz.   (Def. 56.1 ¶¶ 14-17; Pl. 56.1 Resp. ¶¶ 14-17.) Previously, in an e-mail of October 3, 2013, Cabrera told Stephen Meister, "I have a local lawyer getting the local legal cases of acting in bad faith." (Def. 56.1 ¶ 15; Pl. 56.1 Resp. ¶ 15.)  In his deposition, Cabrera confirmed that he was referring to Sola Diaz.  (Cabrera Dep. 46.)  On July 27, 2014, Morales e-mailed Ashby and Stephen Meister, with Cabrera copied, stating that "Ambassador Cabrera's attorney in Puerto Rico Mr. Sola believes the precedent for the current dispute is Tommy Muniz v. COPAN.  Please let us know your thoughts and comments." (Meister Dec. Ex. A.)

Morales, the real-estate consultant involved with plaintiffs' development of the Property, testified that he communicated with Stephen Meister and Sola Diaz.  (Morales Dep. 8-9.)  Morales testified that he discussed the law of bad faith with Sola Diaz in or about July 2014. (Morales Dep. 9-12.)  At his deposition, Cabrera frequently was unable to recall basic details about his legal representation and his communications with attorneys, giving numerous non-responsive answers and asserting that he would have to check his files or consult his secretary. (<u>See</u>, <u>e.g.</u>, Cabrera Dep. 42-82.)  Neither Morales nor Cabrera identified false assurances made by defendants as to their legal representation or claims against CPG.

Meister testified that his representation of plaintiffs ended later in the summer of 2014.  (Meister Dep. 6.)  Meister testified that in August or September 2014, Morales retrieved plaintiffs' legal files from Meister Seelig.  (Meister Dep. 39.)  He recalled that defendants "obviously made it clear that the relationship had ended because you don't pick up files from your lawyer unless you're ending your relationship with your lawyer."  (Meister Dep. 39.)

In opposition, plaintiffs have relied on certain billing invoices that Meister Seelig submitted to plaintiffs.  Plaintiffs initially alleged that their claims were timely because defendants "never sent" invoices and "did not actually transmit them" until November 2015, after plaintiffs demanded that they do so.  (Compl't ¶¶ 98-103.)  They alleged that the billing records reflected absence of meaningful work on the part of defendants, and that plaintiffs did not realize defendants breached their obligations until they reviewed attorney time entries.  (Compl't ¶¶ 98-103.)  However, in opposition to summary judgment, an affidavit from Morales acknowledges that Cabrera had, in fact, received at least some Meister Seelig invoices in 2013 and 2014 "but did not realize it."  (Morales Aff't ¶ 4; see also Legett Dec. Ex. E.)  Defendants also have submitted an e-mail dated August 19, 2014, in which Cabrera forwards to Morales a Meister Seelig invoice without comment, as well as e-mails from Meister Seelig to Cabrera from October and November 2013, which attach invoices and attorney time summaries.  (Meister Dec. Ex. G, B, C.)  The record does not establish when certain other invoices were transmitted: for instance, an invoice for June 2014 is annexed to an e-mail bearing the date of November 22, 2016, which post-dates the filing of this action.  (Meister Dec. Ex. E.)

Nevertheless, the record contains evidence that at least some of the invoices were contemporaneously transmitted.  To the extent that the transmittal dates of other invoices have not been established, plaintiffs have not explained what the attorney time entries would have told them that they did not otherwise know in the summer of 2014: specifically, that Meister Seelig had concluded that any culpa in contrahendo claim was time-barred and would have failed on the merits.  To the extent plaintiffs believe that defendants' failure to bring or preserve such a claim constituted legal malpractice, they had subjective knowledge of their injury and its source no later than July 2014, regardless of attorney time entries.

Based on the summary judgment record, no reasonable juror could conclude that plaintiffs timely commenced their legal malpractice claim against defendants.  First, the summary judgment record contains ample evidence that by July 28, 2014, plaintiffs knew that Meister Seelig had concluded that a culpa in contrahendo claim was meritless and also was time-barred.  Cabrera has stated that Ashby, a Meister Seelig partner, informed him on July 28, 2014 that a culpa in contrahendo claim would be time-barred.  Stephen Meister and Ashby testified in their depositions that they discussed culpa in contrahendo claims in or around the summer of 2014 and informed plaintiffs that such a claim would have no merit.  Morales also has testified that he separately discussed the law of bad faith with Sola Diaz in July 2014, and Cabrera referenced Sola Diaz's research into bad-faith law as far back as October 2013.  No later than July 28, 2014, plaintiffs had subjective knowledge of their injury and its source.  Rodriguez-Suris, 123 F.3d at 15; see also Lopez-Flores v Cruz Santiago, 526 F. Supp. 2d 188, 190 (D.P.R. 2007) (legal malpractice claim was time-barred because plaintiff knew of her injury and its source at the time defendant-attorney withdrew from representation).

Alternatively, plaintiffs did not exercise minimal diligence to identify their injury and its source.  Under Puerto Rico law, as summarized by the First Circuit, the statute of limitations is not tolled "if a plaintiff's ignorance of an injury and its origin was due to the plaintiffs own negligence or lack of care. . . ."  Rodriguez-Suris, 123 F.3d at 15.  Because Puerto Rico law considers "how much diligence should be expected of a reasonable lay person," Villarini-Garcia, 8 F.3d at 84, it is relevant to give some weight to the fact that Cabrera is an experienced businessman and real-estate developer who previously acted as a diplomat on behalf of the United States.  Cabrera testified that he has started "[m]any" corporations, and when asked for an approximate number, stated that it was fewer than 25.  (Cabrera Dep. 12.)  Plaintiffs were

also receiving legal advice on culpa in contrahendo authority from Sola Diaz.  Minimal diligence

and the exercise of due care would have shown that the limitations period expired in February

2014.  A plaintiff need not know the entire scope of injury, and a delay in bringing action based

on "subjective appraisal and judgment" will not toll the limitations period.  Rodriguez-Suris, 123

F.3d at 13.  Because there is no evidence of diligence on plaintiffs' part, Puerto Rico law does

not toll their claims.  See Arturet-Velez, 429 F.3d at 14-15 ("Like one who suspects that an

operation had gone wrong but does not know why, [plaintiff] had a duty to investigate and is

charged with knowledge that consulting with a competent lawyer would have brought forth.").

      Similarly, unlike the dentist tortfeasor in Colon Prieto, plaintiffs have pointed to

no evidence that defendants made false assurances to plaintiffs or concealed the source of any

injury.  15 P.R. Offic. Trans. at 329-30; see also Rodriguez-Suris, 123 F.3d at 16-17 (false

assurances from alleged wrongdoer may weigh in favor of extending the limitations period).

      Viewing the evidence in the light most favorable to plaintiffs as non-movants,

Meister Seelig informed them in the summer of 2014 that they lacked a meritorious tort claim

against CPG, and that such a claim would also be time-barred.  There is no evidence that

plaintiffs then pursued any investigation into the expiration of the limitations period or a

potential claim against defendants.  The Court therefore concludes that plaintiff's claims of legal

malpractice and breach of fiduciary duty are time-barred.

      IV.    Plaintiffs' Assertion that They Have Alleged a Separate Breach of
              Contract Claim Is Meritless.

      Plaintiffs separately argue that their legal malpractice claim is timely because the

Complaint alleges a claim of legal malpractice that is premised on a breach of contract, in

addition to alleging legal malpractice as a form of professional negligence.  Plaintiffs state that

"[w]hile perhaps not the preferred method of pleading," Count One "conflated distinct

negligence and contract claims under a single cause of action entitled 'malpractice' . . . ." (Opp. Mem. a 6.)

Puerto Rico has a fifteen-year limitations period for breach of contract claims. P.R. Laws Ann. tit. 31, § 5294.  Under New York law, an action "must be commenced within three years" for "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort . . . ."  CPLR § 214(6).

The parties agree that New York substantive law governs plaintiffs' claims against Meister Seelig, as distinguished from plaintiffs' potential claim against CPG, which was governed by Puerto Rico law.  (Reply Mem. at 6 n.1, 7 n.3; Opp. Mem. at 6-8.)  Under New York law, a professional-malpractice tort claim may proceed alongside a separate breach of contract claim that is directed to an "implied promise to exercise due care in performing the services required by the contract."  Santulli v. Englert, Reilly & McHugh, P.C., 78 N.Y.2d 700, 705 (1992).  But when tort and breach of contract claims are "completely duplicative" and based on identical damages and factual allegations, a plaintiff "'may sue in contract or tort and the scope of evidence admissible on the issue of liability under either theory is the same.'"  Dormitory Authority v. Samson Constr. Co., 30 N.Y.3d 704, 712 (2018).

The First Amended Verified Complaint does not allege a claim for breach of contract.  Rule 8(a)(2), Fed. R. Civ. P. requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  This requirement "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Ideal Steel Supply Corp. v. Anza, 652 F.3d 310, 323 (2d Cir. 2011) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The first paragraph of the Complaint describes this case as a "legal malpractice action" that arises from "Defendants' egregious negligence in failing to represent Plaintiffs properly" and "their deliberate and shocking decision to favor their own business interests over the interests of their clients." (Compl't ¶ 1.)  In alleging that the action is timely, the Complaint cites to "Puerto Rico's notice-based one-year statute of limitations for tort claims," and make no mention of a contract claim. (Compl't ¶ 105.)  The Complaint contains some references to an agreement between the parties.  It refers to a retainer letter between plaintiffs and Meister Seelig and annexes it as Exhibit A. (Compl't ¶ 3.)  Count One is captioned as a claim for "Attorney Malpractice Against Defendants."  It alleges that the parties entered into an attorney-client relationship through the retainer letter, "giving rise to fiduciary and other duties owed by Defendants to Plaintiffs." (Compl't ¶ 107.)  It then alleges that defendants "breached their duty to Plaintiffs" by failing to investigate tort claims against CPG and not sending a demand letter to CPG, among other things. (Compl't ¶ 108.)  Count Two, which alleges breach of fiduciary duty, states that defendants formed an attorney-client relationship under the retainer letter, "pursuant to which" defendants owed fiduciary duties to plaintiffs. (Compl't ¶ 113.)

The retainer letter is mentioned as context for plaintiffs' tort claims and not as the basis for a separate breach of contract claim.  The Complaint does not include a short and plain statement under Rule 8(a)(2) asserting a breach of contract claim.  To the extent that plaintiffs argue that they have alleged a timely breach of contract claim, that argument is meritless.

Plaintiffs alternatively seek leave to amend their complaint in order to allege a breach of contract claim.  (Opp. Mem. at 7 ("If the Court would prefer, Plaintiffs are prepared (and hereby respectfully seek leave in such event) to amend their Complaint . . . .").)  This request is denied.  Prior to the initial pretrial conference, Meister Seelig filed a pre-motion letter

that described a proposed motion to dismiss on timeliness grounds, and plaintiffs filed a letter in

response.  (Docket # 13, 16.)  The Court then issued an Order granting plaintiffs leave to amend

their initial complaint, after which plaintiffs filed the First Amended Verified Complaint to add

additional allegations as to the action's timeliness.  (Docket # 17, 18.)  Following the initial

pretrial conference, the Court issued a Rule 16 scheduling order providing that any motion to

amend must be filed within 30 days and that subsequent amendments may not be filed without

leave of the Court.  (Docket # 22.)  Thereafter, following Kasowitz's withdrawal as counsel to

plaintiffs, the Court set a schedule for limited discovery as to the action's timeliness, and, after

review of the parties' pre-motion letters, set a briefing schedule on this motion.  (Docket # 42,

57.)  Plaintiffs did not seek leave to amend at that time, nor did they make reference to a contract

claim.  (Docket # 55.)

   When a district court's scheduling order establishes a deadline to amend the

pleadings pursuant to Rule 16(b), that deadline "may be modified only for good cause and with

the judge's consent."  Rule 16(b)(4).  "By limiting the time for amendments, the rule is designed

to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the

parties and the pleadings will be fixed."  Parker v. Columbia Picture Indus., 204 F.3d 326, 339-

40 (2d Cir. 2000) (quotation marks omitted).  The showing for good cause under Rule 16 is

higher than "the lenient standard" of Rule 15(a).  Id. at 340.  "Whether good cause exists turns

on the diligence of the moving party."  BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC,

859 F.3d 188, 195 (2d Cir. 2017) (quotation marks omitted).

   As noted, the Rule 16 scheduling order of December 2, 2016 required any

amendment to the pleadings to be made within 30 days.  (Docket # 22.)  Plaintiffs have not

shown good cause for further amendment.  Discovery as to the limitations issue is now closed.

Plaintiffs have not previously raised the issue of alleging a breach of contract claim.  To the extent that the operative pleading made reference to the existence of a contract, an untimely amendment "cannot be justified because the parties or the court knew the facts that should have been alleged."  BPP Illinois,, 859 F.3d at 195; see also Parker, 204 F.3d at 341 (affirming denial of leave to amend when, at the action's commencement, the plaintiff "had all the information necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise altered that fact.").

Leave to amend is also denied because as noted, New York law does not recognize a contract-based professional malpractice claim that is merely duplicative of a tort claim.  Dormitory Authority, 30 N.Y.3d at 712 (a plaintiff "'may sue in contract or tort and the scope of evidence admissible on the issue of liability under either theory is the same.'").  Plaintiffs have not shown that a contract-based claim would be anything other than duplicative of the untimely tort claims.  Defendants also would be prejudiced by an amendment because, now that the summary judgment record is closed on the statute of limitations issue, it would be unfair and prejudicial to allow the plaintiffs to pursue a new theory.

Plaintiffs' request for leave to amend is therefore denied.

CONCLUSION.

Defendants' motion for summary judgment is GRANTED.  The Clerk is directed to terminate the motion and the related letter-motion (Docket # 54, 58), and to close this case and enter judgment for the defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 10, 2018